WHITEHURST v. UNITED STATES. HUDGINS v. SAME. JONES v. SAME.

(Circuit Court of Appeals, Fourth Circuit. February 1, 1921.)

Nos. 1805–1807.

1. **Evidence ☞352(1)—Entries in books of railroad admissible to show to whom cars were consigned.**

In an action for the value of nitrate of soda stolen from the government and sold to defendants, where it was shown by other evidence that certain cars were loaded with nitrate belonging to the United States, entries by railroad officers in the due course of the railroad's business, showing that such cars were consigned to defendants, were admissible; the verity of the books on this point not depending on information furnished by the thief.

2. **Trover and conversion ☞44—Market value usual measure of recovery.**

In an action based on the implied promise of one converting to his own use the goods of another to pay for them, the measure of recovery is usually the market value of the goods at the time of the conversion.

3. **Trover and conversion ☞47—Measure of recovery, where there was no market, stated.**

In an action for the value of nitrate of soda stolen from the government and sold to defendants, where the government as a war measure had closed the market for nitrate of soda, and it could be bought and sold only by government consent, at prices fixed by the government, the prevailing price in Chile, paid by the government, plus the cost of transportation to the United States, was the measure of damages.

4. **Trial ☞255(7)—Defendants held bound to ask for instruction on theory that different substance was substituted for stolen article before reaching them.**

In an action for the value of nitrate of soda stolen from the government and sold to defendants, an instruction that the burden was on the government to prove that the nitrate of soda mentioned in the declaration was the property of the government, and was purchased and received by defendants, required a finding that the substance received was nitrate of soda belonging to the government, and imposed on defendants the duty of asking a specific instruction that they would not be liable if the stolen nitrate of soda was taken from the cars on which it was loaded, and a different substance substituted before reaching defendants.

5. **Appeal and error ☞1066—Reference in charge to matter about which there was no evidence held harmless.**

In an action for the value of nitrate of soda stolen from the government and sold to defendants, where defendants claimed that the article received by them was not nitrate of soda, because it killed their crops, but there was no evidence that nitrate of soda of any kind would have

<hr />

such effect, a reference in the charge to inferior or deleterious nitrate of soda was irrelevant and harmless.

6. **Trial ☞252(20)—Instruction as to damages about which there was no dispute held irrelevant.**

In an action for the value of nitrate of soda stolen from the government and sold to defendants, where there was no dispute as to its value, a requested instruction that the government was entitled to recover only the actual value was irrelevant, and properly refused.

In Error to the District Court of the United States for the Eastern District of Virginia, at Norfolk; Edmund Waddill, Jr., Judge.

Separate actions by the United States against W. L. Whitehurst, against W. E. Hudgins, and against N. M. Jones, which by consent were tried together. Judgments for the United States, and each defendant brings error. Affirmed.

Thomas H. Willcox, of Norfolk, Va. (William W. Old, Jr., of Norfolk, Va., on the brief), for plaintiffs in error Whitehurst and Jones.

James G. Martin, of Norfolk, Va. (Fred C. Abbott, of Norfolk, Va., on the brief), for plaintiff in error Hudgins.

Hiram M. Smith, Sp. Asst. U. S. Atty., of Richmond, Va.

Before KNAPP and WOODS, Circuit Judges.

WOODS, Circuit Judge. In each of these actions of assumpsit, tried together by consent, the United States recovered judgment for the alleged value of nitrate of soda charged to have been stolen by W. B. Tredwell and sold to the defendants separately. Error is assigned in the admission of testimony and in the instruction on the measure of recovery.

In August, 1918, the United States, through W. R. Grace & Co. and Wessel-Duval Company, ship agents, imported two shiploads of nitrate of soda to the port of Norfolk, in the ships Eastern Star and Russ. The ship agents employed W. B. Tredwell, a stevedore, to unload the nitrate into cars on the Norfolk & Western Railroad and bill it to munition plants as directed by the Ordnance Department. After some of these cars had been loaded, Tredwell billed them to fertilizer companies and other consumers, and invoiced and forwarded fictitious bills of lading to the munition plants. He was convicted of larceny for the alleged offense, and the judgment was affirmed by this court. 266 Fed. 350.

[1] The specific claims of the government are that three of the cars, marked "St. L. & S. F. 122972," "D., L. & W. 26219," and "C., M. & St. P. 90482," were consigned to the defendants, respectively, and the contents converted by them. To establish its claim against the defendants it was necessary for the government to prove the fact that Tredwell had stolen the contents of the cars received by defendants. For this purpose parol testimony was introduced to the effect that the cargoes unloaded from the ships and placed on cars by Tredwell consisted of nitrate of soda belonging to the United States, which it was his duty to consign to government munition plants. The government

was allowed to introduce the books of the Norfolk & Western Railroad, showing that the cars marked as indicated, after being loaded, were actually consigned to the defendants. The books were fully identified, and the entries proved by the railroad officials who made them to have been made in the course of the railroad's business by the direction of Tredwell. The proof outside of the book entries was plenary that the cars described were loaded with nitrate, the property of the United States. The only material fact proved by these book entries was that the cars so loaded and so marked were consigned to the defendants. The verity of the books on this point did not depend on information furnished by Tredwell; they were the records of acts of consignment to the defendants, done by the railroad officers themselves in the due course of the railroad's business. In this view, and for this purpose, all possible objection to the book entries disappear. This becomes the more evident when it is remembered that other railroad records, introduced without objection, showed the delivery of the identical cars to the defendants.

[2, 3] In actions like these, based on the implied promise of one who converts to his own use the goods of another to pay for them, the measure of the recovery is usually the market value of the goods at the time of the conversion. Here, however, the proof was that the market for nitrate of soda had been closed by the government as a war measure; that it could not be bought and sold except by government consent and at prices fixed by the government. The United States had bought this nitrate of soda in Chile at the prevailing price paid by all the allied governments, and had paid $25 a ton additional for its transportation to Norfolk. This cost price delivered at Norfolk was therefore the value to the United States of any nitrate of soda received by the defendants, and was therefore necessarily the only criterion for ascertaining the damage resulting to the government from the loss of any nitrate of soda stolen from it. The court correctly so charged.

The defendants introduced testimony to the effect that the material received by them as nitrate of soda did not have the usual appearance of nitrate of soda; that nitrate of soda, applied as this substance was applied, was beneficial to crops; and that the application of the substance received by defendants in the proper quantities killed their growing crops of spinach and kale. There was also evidence of the well-known fact that the same element, nitrogen, which makes nitrate of soda valuable in making munitions constitutes its value as a fertilizer. All this was in the effort to prove that the cars received by defendants were not loaded with nitrate of soda, but with some other substance. Responding to the issue thus made the court charged:

"The burden is upon the government to prove by a preponderance of the evidence that the nitrate of soda mentioned in each declaration was the property of the government, that the same was purchased and received by each of the several defendants, and that theretofore it had been stolen from the government."

[4] This meant it was necessary that the jury should find, as a condition for the recovery of the government, that the substance which the

defendants received was nitrate of soda belonging to the government, and stolen from the government, and not some other substance. This issue thus submitted to the jury was the only real issue made by the testimony for the defendants, namely, whether the substance received on the cars by the defendants was nitrate of soda—not whether it was inferior nitrate of soda. If the defendant wished a more specific instruction that they would not be liable if nitrate of soda stolen from the government had been taken from the cars and another substance substituted, they should have asked for it.

[5] There was not a particle of evidence in the record indicating that nitrate of soda of any kind would have a deleterious effect on vegetation used in the way described by the defendants, and the reference in the charge to inferior or deleterious nitrate of soda was entirely irrelevant and harmless.

[6] The request of the defendants to charge that the government was entitled to recover only the actual value of the goods was also irrelevant. There was no dispute as to the value of nitrate of soda. If the defendants received the nitrate of soda belonging to the government, they were liable for the value so proved. If they did not receive nitrate of soda, they were not liable at all.

The court having fairly submitted to the jury the only substantial issue, whether the defendants received nitrate of soda stolen from the government in the quantities charged in the declarations, and the value of nitrate of soda having been proved beyond dispute, there is no foundation for the assignments of error in the charge.

Affirmed.