RICHMOND GUANO CO. et al. v. E. I. DU PONT DE NEMOURS & CO.

(Circuit Court of Appeals, Fourth Circuit. November 7, 1922.)

No. 1993.

1. **Principal and agent** &#x21db;103(7)—One acting as stevedore, etc., had no authority to sell goods in his care.

An importing corporation's employment of a person as stevedore to unload and weigh its cargoes of nitrate, as customs broker to settle with custom house officials, and as a forwarder to consign the carloads of nitrate as ordered, implied agency to do whatever was necessary to such services; but an agency so limited, accompanied by custody of the property for the purposes of the agency, not only did not confer authority to sell, but negatived such authority.

2. **Principal and agent** &#x21db;147(2)—Scope of agency must be ascertained.

Those dealing with agents must ascertain at their peril the scope of the agency.

3. **Principal and agent** &#x21db;99—Rule of implied agency stated.

An agent's act within the apparent but not the real scope of his authority binds the principal, where loss would otherwise result to one who in good faith and with justification has relied upon such apparent authority.

&#x21db;For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**4. Principal and agent ⬅99—Rule as to apparent authority stated.**

An act is within the apparent scope of an agent's authority when a reasonably prudent person having knowledge of the usages of the business is justified in supposing that he is authorized to perform it from the character of the known duties.

**5. Principal and agent ⬅123(7)—Business sign as agent held not evidence of authority to sell as agent.**

Advertisement of one as "steamship agent, custom house broker, general stevedoring, weighing and sampling. Agent for" a named principal, and a sign on the agent's door in the same words, *held* not to reasonably support any inference that the individual was a selling agent or general agent for the principal; the natural inference being that the person was agent only in the businesses specifically mentioned.

**6. Principal and agent ⬅123(7)—Sign of agent on warehouse held not to evidence agency for sale.**

A sign stating the principal's name, followed by that of an individual with the word "agent" added, placed on a warehouse where the principal's goods were kept in storage, and not for sale by it, *held* to furnish no reason to infer that the agency was one for sale, but rather gave rise to a contrary inference.

**7. Principal and agent ⬅123(4)—Special sales by agent to others held not to show authority to sell generally.**

Prior sales by stevedoring agent of his principal's goods, authorized by special authority of the principal, and the agent not being authorized to receive the price or do anything more than deliver the goods to the purchaser, *held* not to tend to prove that the agent could sell or deliver such goods without special authority and direction.

**8. Principal and agent ⬅166(3)—Collection of proceeds of unauthorized sale held not to ratify sales of which principal had no knowledge.**

The successful efforts of a principal to collect from its special agent the value of goods converted by him by unauthorized sales *held* not to connote ratification of other unauthorized sales of which the principal had no knowledge.

**9. Principal and agent ⬅124(3)—Estoppel to deny right of special agent to sell goods held for jury.**

Evidence that conversation between special agent and one to whom he was selling the principal's goods was overheard by an employee of the principal *held* not conclusive that the principal, after notice, allowed the purchasing to go on, but merely raised a question for the jury of the principal's estoppel.

**10. Principal and agent ⬅147(2)—Duty of diligence to discover agent's unauthorized acts not on principal, but on party dealing with him.**

It is not the law that a principal, who discovers that his agent has undertaken to act beyond the scope of his authority in two or three transactions, is under obligation to the public or to any individual to institute prompt and thorough examination of all the agent's transactions in a very large business to discover other unauthorized dealings for the protection of those who deal with the agent without ascertaining the scope of his agency, for diligence to ascertain if an agent is exceeding his authority devolves on those who deal with him, not on his principal.

**11. Principal and agent ⬅170(4)—Failure to discharge agent does not ratify acts not known to the principal.**

Third persons have no right to demand that a principal shall immediately discharge an agent on discovery that he has exceeded his authority, at the peril of being bound by unauthorized acts of which the principal has no knowledge.

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

12. Appeal and error ⊚⟷1033(5)—Instruction on principal's negligence as estoppel to deny agent's authority held not cause for complaint by plaintiffs in error relying on agent's authority.

Where plaintiffs in error's case depended on the claimed right of an agent for defendant in error to sell goods, an· instruction, that defendant in error's negligent failure to check up the agent's dealings when put on notice of sales not within his actual authority might estop defendant in error to deny such agency, *held* not ground for complaint by plaintiffs in error.

In Error to the District Court of the United States for the Eastern District of Virginia, at Norfolk; Edmund Waddill, Jr., and D. Lawrence Groner, Judges.

Actions by the E. I. Du Pont de Nemours & Company against the Richmond . Guano Company and others, tried together. Judgments for plaintiff, and defendants bring error. Affirmed.

Cadwallader J. Collins, of Norfolk, Va., Berkeley Cox and S. S. P. Patteson, both of Richmond, Va., and G. Hatton, of Portsmouth, Va. (J. H. Rives, Jr., of Richmond, Va., on the brief), for plaintiffs in error.

Edward R. Baird, Jr., of Richmond, Va., and V. S. Thomas, of Wilmington, Del. (Baird, White & Lanning and R. Clarence Dozier, all of Norfolk, Va., on the brief), for defendant in error.

Before KNAPP and WOODS, Circuit Judges, and SMITH, District Judge.

WOODS, Circuit Judge. These cases were tried together and resulted in verdicts for the plaintiff for the amounts claimed. Like the case of Richmond Guano Co. v. W. R. Grace & Co., 284 Fed. 801, this day decided, they arise out of the nefarious sales of nitrate by W. B. Tredwell, but the issues are less simple. Other similar· transactions of Tredwell were considered by us in Tredwell v. United States, 266 Fed. 350, and Whitehurst v. United States, 272 Fed. 46.

These facts are common to all the cases: E. I. Du Pont de Nemours & Co., Incorporated, from 1915 to 1918, the period with which we are concerned, was importing in vessels owned or chartered by it about 30,000 tons of nitrate a month. The corporation used the nitrate chiefly in the manufacture .of munitions, supplying the allies in the World War about 41 per cent. of their explosives. W. B. Tredwell was a public stevedore, weigher, and forwarding agent in Hampton Roads ports. For handling its very large importations of nitrate through Hampton Roads, the Du Pont Company employed Tredwell as stevedore, weigher, forwarder, and customs broker from June, 1915, to June 25, 1918, paying him for services and disbursements about $700,000. On arrival of ships, Tredwell, as the corporation's customs broker under written authority, entered the cargoes and transacted other necessary business with the custom house officials. By oral contract he was employed by the Du Pont Company to unload the cargo. He was employed also by the railroad company to load the nitrate on cars at the dock. His practice was to perform his service as

stevedore to the Du Pont Company and the railroad company at the same time by loading directly from the ship to the cars. As forwarding agent of the Du Pont Company, his authority and duty was to consign the nitrate on the cars, not at his discretion, but as ordered by the Du Pont Company.

At various times the defendants separately bought nitrate belonging to the Du Pont Company either from Tredwell or from De Jarnette, a broker, or others who procured it from Tredwell. The judgments in these actions were for the value of the nitrate so converted by Tredwell and purchased and used by the several defendants. The defenses were: (1) That Tredwell was authorized by plaintiff to sell; (2) that plaintiff so conducted its business that defendants were justified in believing that Tredwell was authorized to sell; (3) that plaintiff is estopped from repudiating the authority of Tredwell to sell by its negligence in failing to discover the alleged unauthorized sales, and its negligence in failing to give prompt notice of the discovery.

[1]. It is too plain for argument that plaintiff in the conduct of its large business could employ Tredwell or any other person as stevedore, or as weigher, or shipping agent under its orders, or customs broker, or employ him in all these capacities and limit his agency to them. The employment of Tredwell by plaintiff as a stevedore to unload and weigh its cargoes, as a customs broker to settle with the custom house officials, as a forwarder to consign the carloads of nitrate as ordered by the owner, implied agency to do whatever was necessary to the services he had undertaken to perform. But an agency so limited, accompanied by custody of the property for the purposes of the agency, not only did not confer the authority to sell, but it negatived such authority. The evidence is conclusive that plaintiff did not directly or indirectly confer authority to sell.

[2] It is elementary that those who deal with agents must ascertain at their peril the scope of the agency. Dows v. National Exchange Bank, 91 U. S. 618, 636, 637, 23 L. Ed. 214; Thatcher v. Kaucher, 131 U. S. Appendix cxlvii, 24 L. Ed. 511; Owens Bottle-Machine Co. v. Kanawha Banking Co. (4th Circuit) 259 Fed. 838, 170 C. C. A. 638; Raven Red Ash Coal Co. v. Herron, 114 Va. 103, 75 S. E. 752; 2 Corpus Juris 562, 563, 564, 569, 594. "The mere fact that one is dealing with an agent, whether the agency be general or special, should be a danger signal, and, like a railroad crossing, suggests the duty to 'stop, look and listen,' and he who would bind the principal is bound to ascertain, not only the fact of agency, but the nature and extent of the authority, and in case either is controverted the burden of proof is upon him to establish it. In fine, he must exercise due care and caution in the premises." Brutinel v. Nygren, 17 Ariz. 491, 154 Pac. 1042, L. R. A. 1918F, 713, 717.

[3, 4] It is contended, however, plaintiff knowingly allowed Tredwell so to conduct the business that he had the apparent authority to sell and defendants are protected by that apparent authority. The rule on this subject, universally recognized, is thus well formulated in one of the defendant's briefs: The act of an agent within the

apparent, but not within the real scope of his authority, is binding on the principal where loss would otherwise result to one who has in good faith relied on such apparent authority. And an act is within the apparent scope of an agent's authority when a reasonably prudent person having knowledge of the usages of the business, is justified in supposing that he is authorized to perform it from the character of the known duties. National Safe Deposit Co. v. Hibbs, 229 U. S. 391, 33 Sup. Ct. 818, 57 L. Ed. 1241; Commercial National Bank v. Shriver (C. C. A. 4th Circuit) 275 Fed. 12.

Was anything done by plaintiff, or by Tredwell with plaintiff's sanction, which tended to justify the defendants or those from whom they purchased in believing that Tredwell was authorized to sell the nitrate purchased by them from him? In weighing the testimony relied on to justify such a belief, it is to be borne in mind that Tredwell had a large and well-known business of the kind plaintiff employed him to transact, and that there is no evidence that he ever was an authorized selling agent of any kind or that he ever publicly held himself out as a selling agent.

The defendants were entitled to succeed to all the rights of the persons from whom they purchased and to set up any defense available to such persons. The Richmond Guano Company, F. S. Royster Guano Company, and Pamlico Chemical Company seem to stand on the same footing. We consider the facts relied on to show that all the defendants and those from whom they purchased were justified in believing that Tredwell was authorized to sell.

[5, 6] First. Advertisements by Tredwell, "W. B. Tredwell, Norfolk, Va. Steamship Agents, Custom House Brokers, General Stevedoring, Weighing and Sampling. Agents for E. I. Du Pont de Nemours & Company," and a sign on his door in the same words. No reasonable inference could be drawn from this advertisement and sign that Tredwell was a selling agent or a general agent for the Du Pont Company; but, on the contrary, the natural inference was that he was its agent in the business mentioned, namely, "Custom house brokers, weighing and sampling." The sign, "Du Pont de Nemours & Company, W. B. Tredwell, Agent," on the warehouse where nitrates were kept in storage, not for sale, by the Du Pont Company, furnished no reason to infer an agency for sale but rather the contrary.

[7] Second. The sale in 1916 of 30,000 pounds of nitrate to Henry Kirn, and of 500 tons to the Royster Company. Both sales were authorized by special authority of the Du Pont Company, and in neither instance was Tredwell authorized to receive the price or to do anything more than deliver the goods to the purchaser. Plaintiff did not know of the consummation of the sale to Kirn until 1918. The transactions tended to prove that Tredwell could not sell or even deliver nitrate without special direction and authority. Three sales to the Trotman Company are also relied on, but these sales like the others were not known to any of the other defendants and could not have misled them.

[8] The successful efforts of the Du Pont Company to collect from Tredwell the value of the goods so converted by above mentioned unauthorized sales did not connote ratification of other unauthorized sales of which the principal had no knowledge. 2 C. J. 495, 496.

We think, therefore, the instruction was properly given that Tredwell had no actual authority to sell, and that there was nothing in the testimony to justify the Richmond Guano Company or F. S. Royster Guano Company or Pamlico Chemical Company in believing that he had such authority.

[9] As to the Trotman Manufacturing Company, there was one item of evidence which required the question of plaintiff's estoppel to deny Tredwell's authority to sell to it to be submitted to the jury. E. W. Jenkins, manager of the Trotman Company, testified that in 1916 and 1917 he made purchases of nitrate from Tredwell as agent for the Du Pont Company in response to Tredwell's solicitation; that subsequently, in January, 1917, after his first purchase and before his second, he had a negotiation with Tredwell in his office looking to the purchase of nitrate while Garrettson, clerk in plaintiff's purchasing department charged with attending to the supply of nitrate to plaintiff's mills, was standing by near enough to hear the conversation; that he was subsequently introduced by Tredwell to Garrettson as "one of our best customers"; and that no objection was made then or at any other time to Tredwell's making sales to the witness. The District Judge charged the jury in effect that if this undenied conversation and introduction were sufficient to apprize Garrettson as an ordinarily prudent man that Tredwell was selling plaintiff's nitrate to the Trotman Company, and he made no objection then or afterwards, thus allowing the Trotman Company to go on purchasing without notice, the plaintiff would be estopped from repudiating Tredwell's authority to sell to the Trotman Manufacturing Company and could not recover against that company. This we think was all the Trotman Company could claim as the effect of this evidence. Surely defendant, the Trotman Company, could not assert the evidence of Jenkins to be conclusive that the Trotman Company was purchasing plaintiff's nitrate with its sanction, when the checks in payment of it were made to Tredwell individually, not to the Du Pont Company or to Tredwell as agent.

[10] There was no duty on plaintiff to suspect Tredwell, and defendants had no right to demand that plaintiff should keep a watch over him or check his transactions to see that he did not act beyond the scope of his agency. But in January or February, 1918, Garrettson checked Tredwell's warehouse accounts and discovered the unauthorized sales in 1917 to the Trotman Company, Kirn, and another. Had not Tredwell settled for these sales on demand, evidently the plaintiff would have owed the duty to notify the Trotman Company and Kirn of these sales very promptly so that they could take any steps they saw fit to protect themselves. Leather Manufacturer's Bank v. Morgan, 117 U. S. 96, 6 Sup. Ct. 657, 29 L. Ed. 811; Robb v. Vos, 155 U. S. 13, 15 Sup. Ct. 4, 39 L. Ed. 52; Insurance Co. v. McCain, 96 U. S. 84, 24 L. Ed. 653. But no authority has been cited,

and we have been able to find no authority or reason supporting the proposition that a principal who discovers that his agent has undertaken to act beyond the scope of his authority in two or three transactions is under obligation to the public at large or to any individual to institute prompt and thorough examination of all his transactions in a very large business to discover other unauthorized dealings, for the protection of those who have chosen to deal with the agent without ascertaining the scope of the agency. Diligence to ascertain if an agent is exceeding his authority devolves on those who deal with him, not on his principal. Haswell v. Standring, 152 Iowa, 291, 132 N. W. 417, Ann. Cas. 1913B, 1326, 1328.

[11] Nor have third persons a right to demand that a principal shall immediately discharge an agent on discovery that he has exceeded his authority, at the peril of being bound by unauthorized acts of which the principal has no knowledge. Deacon v. Greenfield, 141 Pa. 467, 476, 21 Atl. 650; 2 C. J. 513.

[12] The District Judge, however, did instruct the jury that—

If the disclosures of the sales were in the opinion of the jury "of sufficient importance, and that the character of them and the circumstances surrounding them were of such character, as to put an ordinarily prudent business man on notice that his agent had and was improperly and unlawfully dealing with a product which he had put in his hands for one purpose for another purpose, and if you also believe that in the exercise of ordinary and reasonable care as an ordinary business man the Du Pont Company might have, by an examination or a further examination of the books and records, of theirs, Tredwell or of the Jones Company, have discovered these subsequent sales to the Trotman Company or to the Royster Company or to the Richmond Company, and that if they had discovered them they could have indemnified themselves by withholding from Tredwell moneys which belonged to him or which they owed to him, if you find that they did owe him money and could have indemnified themselves, or if by calling the attention of these defendants to the fact, that they would have enabled them to have saved themselves by demand on Tredwell or otherwise, and their failure to make such investigation as an ordinarily prudent man would have made and their delay in making the investigation to a time when Tredwell became bankrupt was the proximate cause of the ultimate loss, then under those circumstances their negligence should impose upon them rather than upon these defendants the loss which subsequently accrued."

If we are correct in our view of the relation of the parties, the defendants surely had no ground to complain of the instruction. There is no occasion to decide whether the instruction was too favorable to the defendants.

The requests submitted by defendants not covered by the general charge were unsound as applied to the facts, as we have tried to show by the foregoing discussion. The only real issues of ratification and estoppel were fairly submitted to the jury.

The regrettable losses of defendants are the result of the blind assumption without the least inquiry that an agent employed to unload and ship nitrate as directed by his principal had authority to sell it, and that, too, when the agent was known to the public as a stevedore, shipper and custom house broker.

All the judgments must be affirmed.

Affirmed.