[Civil No. 1469.   Filed February 10, 1916.]

[154 Pac. 1042.]

# MRS. M. BRUTINEL, Appellant, v. J. E. NYGREN, Appellee.

1. BROKERS—ACTION FOR COMPENSATION—QUESTION OF LAW OR FACT.— In an action to recover for effecting the sale of defendant's property, where the inferences to be reasonably drawn from the undisputed facts were such that men might not reasonably differ concerning them, the question was one of law for the court.

2. APPEAL AND ERROR—REVIEW—VERDICT.—In such case, if there was any evidence reasonably tending to support the judgment for plaintiff, it ought to be sustained.

3. PRINCIPAL AND AGENT—ACTS OF AGENT—AUTHORITY.—A principal is not responsible for contracts which he has neither directly nor indirectly authorized, since the primary object of an agency is to bring the principal into contractual relations with third parties.

   [As to unauthorized acts of agent, see note in 48 Am. St. Rep. 916.]

4. APPEAL AND ERROR—TRIAL—HARMLESS ERROR—ORDER OF PROOF.— The mere order of proof is not vital, but is within the legal discretion of the trial judge, and his allowance of evidence of the agent's acts before proof of the agency to do the particular act in question was not reversible error.

5. PRINCIPAL AND AGENT—AGENT'S AUTHORITY—PROOF.—The nature and extent of an agent's authority must ultimately be established only by tracing it to its source in some word or act of the alleged principal, as the agent cannot confer authority upon himself, or make himself agent, merely by acting as such, or saying that he is an agent.

6. PRINCIPAL AND AGENT—NATURE OF RELATION—"AGENCY."—"Agency" has its conception in something lawful that a person may do, and a delegation by such person to another of the power lawfully to do that thing.

7. PRINCIPAL AND AGENT—"GENERAL AGENCY."—A "general agency" does not confer upon the agent a universal or unlimited authority, or make him *alter ego;* but the exercise of his authority is limited to that which is expressly conferred, broadened by the apparent authority, upon which third persons exercising due care may rely, to do all acts within the ordinary and usual scope of the business he is empowered to transact. The scope of a general agency is or-. dinarily much less restricted than that of a special agency, though

the distinction from a special agency is not a distinction of principal, but merely a difference in the actual measure of authority.

8. PRINCIPAL AND AGENT—"SPECIAL AGENCY."—The authority to do a single thing, perhaps in a specific way, is a "special agency," the scope of which is ordinarily much more restricted than that of a general agency, though the principal's liability for acts within the agent's power is the same as that of a general agent; the difference being merely in the actual measure of the agent's power.

9. PRINCIPAL AND AGENT — RIGHTS OF THIRD PARTIES — EXTENT OF AGENT'S AUTHORITY.—The mere fact that one is dealing with an agent, whether the agency is general or special, is a danger signal; and one dealing with an agent, if he would bind the principal, is bound to ascertain, not only the fact of the agency, but the nature and extent of the authority.

10. PRINCIPAL AND AGENT—RIGHTS OF THIRD PARTIES—EXTENT OF AUTHORITY—BURDEN OF PROOF.—In such case, if either the nature or the extent of the agent's authority is controverted, the burden is on the third party dealing with him to establish it.

11. BROKERS—SPECIAL AGENCY—DELEGATION OF AUTHORITY.—An agent employed to manage a drug-store, and during the course of such employment specially authorized to offer it for sale, while impliedly authorized to do all the acts naturally and ordinarily done in such cases, had no implied authority to employ a subagent to sell the drug-store, goodwill and fixtures at the expense of his principal, as such act was not naturally and ordinarily done in such cases, in the absence of any custom or course of dealing between the parties justifying the extension of the agency to include such power.

12. PRINCIPAL AND AGENT — RATIFICATION—KNOWLEDGE OF FACTS.—In such case the principal, who was ignorant of the fact that the agent had employed a subagent to sell the drug-store at the principal's expense, could not be bound by the doctrine of ratification, since ratification rests upon knowledge of the facts or thing to be ratified and voluntary action on the part of the principal.

13. ESTOPPEL—CHANGE OF POSITION.—In such case the principal was not liable on the ground of estoppel where the subagent had not changed his situation to his detriment in his reliance upon the principal's conduct.

14. BROKERS—ACTION FOR COMMISSIONS—INSTRUCTIONS.—In an action by one employed by defendant's special agent to sell defendant's drug-store, where the issue was whether defendant had authorized the special agent to employ plaintiff at her expense, the jury should have been instructed to find a verdict for the defendant, if such employment was not so authorized, unless the employment, if unauthorized, was ratified by the principal.

15. Appeal and Error—Prejudicial Error—Instruction—Ignoring Issues.—In such action, an instruction that the sole question was whether plaintiff had earned a commission according to the terms of the contract, and that, if he had, it was the jury's duty to determine the amount, was prejudicial, as excluding from the jury's consideration the issue of the authority of defendant's special agent to employ plaintiff, and in fact authorizing the jury to determine whether they thought it just or desirable that defendant should be held liable.

APPEAL from a judgment of the Superior Court of the County of Greenlee.  A. G. McAlister, Judge.  Reversed and remanded.

Mr. L. Kearney, for Appellant.

Mr. E. V. Horton, for Appellee.

FRANKLIN, J.—Two important doctrines familiar to the law of agency come forward for consideration in this case: The one has to do with the appointment of an agent and the nature and extent of his authority; the other relates to the doctrine of ratification and agency by estoppel.  In order to make this judgment intelligible in principle and in results, we shall first try to ascertain and summarize the ultimate or cardinal facts to be gleaned from the record, without an attempt to give even a moderate proportion of the details. Then we shall discuss and apply the law as we understand it. The court in this case, and properly so, allowed great latitude in the admission of testimony from which the existence of an agency and the authority of such agent to do the particular act in controversy may be inferred.  It is our duty to give this evidence its full scope, with every fair and reasonable inference that may be derived from it, and then say whether the judgment is supported by the law and the facts.

The appellant, Mrs. M. Brutinel, is a French woman, with but little knowledge of the English language.  She was the owner of a drug-store on Chase creek in the town of Clifton. Mr. C. P. Dunn, a druggist by profession, is her son-in-law. Mr. Dunn induced Mrs. Brutinel to purchase the drug-store, and on the faith of his promise to manage the business she invested her money in it.  Some time after the purchase of the drug-store Mr. Dunn decided to leave Clifton to engage

in other business. Because he had been instrumental in getting Mrs. Brutinel to go into the drug business on his promise to manage it for her, and having decided to leave Clifton, Mr. Dunn wished to obtain for Mrs. Brutinel the return of her investment. To this end he induced Mrs. Brutinel to allow him to find a purchaser for the business, which she did, with the understanding that any purchaser he might procure would buy it upon terms and conditions satisfactory to her. In the latter part of May, 1913, Mrs. Brutinel sold the drug-store to Mr. David Robbins and Mr. W. A. Riker for $4,000, executing to them her bill of sale conveying the property; the purchase money in part being evidenced by promissory notes secured by a chattel mortgage. The appellee, Mr. J. E. Nygren, who is also engaged in the drug business, claiming that Mrs. Brutinel is indebted to him on account of the transaction, brought this action to recover $1,450 for his services. The employment of Mr. Nygren had its origin in the following letter written to him by Mr. Dunn:

"Clifton Drug Company, Mrs. M. Brutinel, Prop.
"Clifton, Arizona, February 13—12.
"Mr. Nygren:

"Received your letter to-night. Also the other reached me some time ago, which I immediately answered by wire, care Owl Drug Store. I figured that anyway Wayland would know just where to reach you. Not receiving answer to the wire, I concluded you had decided to call it off. In the wire I quoted you a price of 850.00 on the fixtures exclusive of jewelry fixtures. These together with space I have rented to Mr. Miller, and he is open and doing business. Of course, since quoting you the above price, I have continued making preparations to open up, and now expect to open about next Tuesday or Wednesday. The outlook is certainly very favorable here. Every one seems to be kicking at the new manager down below. I have gone to considerable expense in making the store presentable, repainted and papered throughout, put in new linoleum and new set wiring and new electric fixtures. The store will be as good as new and will look better than it ever did when we reopen. I feel now it would not justify me to take less than $1,000.00 for fixtures, and stock to be invoiced at wholesale cost. If you cared to make this deal on this basis, would allow you 5%, or if you

can get over $1,000 for fixtures, which you should be able to do, you could have all above this amount. The fixtures and fountain together cost originally at least $2,500.00  The stock I have bought since is only staple goods and in moderate quantities.  Probably stock will run $1,000.00 in all, making the whole a $2,000.00 proposition.  I do not think the outfit, everything considered, could be beat at this price anywhere; and I feel confident I could do some better in short time if I hold it.  If you decide to do anything let me know at once, as I am carrying ads in several big daily papers and will sell first favorable opportunity.  Will make terms on half, if desired, and if party is reliable.  With best wishes, I am,

"Your truly,

"C. P. DUNN.

"Miller pays $25.00 mo. rent.  This would make drug dept. rent $60.00 month."

Mrs. Brutinel was never informed of the contents of this letter.  She had no knowledge whatever that it had been written.  She never knew anything at all at any time about any contract or promise or transaction which Mr. Dunn had or was having with Mr. Nygren.  Indeed, she never knew of Mr. Nygren, or that he was claiming any remuneration from her, until the summons and complaint were served upon her in this action.  She never employed the plaintiff, but he was employed by Mr. Dunn.  True it is that Dunn was her agent, authorized to manage her drug business; and true it is that he was her agent specially authorized to find a purchaser for the business, the sale to be made upon terms and conditions satisfactory to appellant.  Dunn had no special authority and no power to conclude a contract for the sale and purchase of the drug business.  His authority was expressly limited to finding a purchaser satisfactory to the principal. The distinction is here to be noted between the authority given to an agent to sell, and the authority given to an agent merely to offer for sale.  There is not a scintilla of evidence that the authority of Dunn included the authority to employ the appellee at the expense of the appellant, unless such a power may be implied from his agency to manage the drug business and his subsequent special authority to find a satisfactory purchaser for it.  Mr. Dunn testified that when he wrote the letter to Mr. Nygren, which is copied herein, he

was not acting for Mrs. Brutinel, but solely on his own initiative, for himself alone; that he never told her anything about it, and if there was any obligation incurred it was his own, and not Mrs. Brutinel's. Among other instructions, the court gave the following:

"You are instructed that if you believe from the evidence that the plaintiff was employed to find a purchaser for the property of defendant, and pursuant thereto did find a purchaser who, through the efforts of the plaintiff, purchased defendant's property in question upon the terms specified, or upon terms agreed to between the defendant and such purchaser, and that the plaintiff was the procuring cause of the sale, then your verdict will be for the plaintiff.

"As the case is presented to you, the sole question is whether or not the plaintiff has earned a commission according to the terms of the contract, and in case you decide he has, it is your duty to determine the amount of that."

The case was tried to a jury, which gave the appellee a verdict for $1,250. Judgment followed the verdict. The appeal is from the judgment and order denying the motion for a new trial.

At the close of the plaintiff's evidence, and again at the close of all the evidence in the case, the defendant requested an instruction in the nature of a demurrer to the evidence. The court refused to grant either of these requests, and the ruling is assigned as error—the ground being in substance that there is no evidence tending to show that Mr. Dunn was authorized to act for the defendant, or that he ever did act for the defendant in employing the plaintiff; that if he did so act, his action was unauthorized and unratified by defendant. Error is also predicated upon the instructions given.

A careful review of the record discloses that the facts are not disputed. It is only the inferences which can reasonably be drawn from them that give rise to the contentions here, and we are of opinion that the inferences to be drawn from the facts in this case are such that men may not reasonably differ concerning them. The question is therefore one of law for the court. However, if there be any evidence reasonably tending to support the judgment, it ought to be sustained.

The primary object of an agency is to bring the principal into contractual relations with third parties—into privity with them; and it is elementary, therefore, to say that a principal is not responsible for contracts which he has neither directly nor indirectly authorized.

"It is axiomatic in the law of agency that no one can become the agent of another except by the will of the principal, either expressed or implied from particular circumstances; that an agent cannot create in himself an authority to do a particular act by its performance; and that the authority of an agent cannot be proved by his own statement that he is such." *Graves* v. *Horton*, 38 Minn. 66, 35 N. W. 568.

Of course, the mere order of proof is not vital. This is within the legal discretion of the trial judge, and if he allows evidence of the agent's acts before proof of the agency to do the particular act in question, it will not be reversible error, provided proof of such agency is established at some stage of the trial. But where the nature and extent of an agent's authority is directly involved, it must never be lost sight of; and this cannot be too strongly emphasized, that it ultimately may be established only by tracing it to its source in some word or act of the alleged principal. The agent certainly cannot confer authority upon himself, or make himself agent, merely by acting as such, or saying that he is one. Mr. Mechem says:

"The agent's authority, moreover, may not be shown merely by proving that he acted as agent. A person can no more make himself agent by his own acts only than he can by his own declarations or statements. If his acts can be connected with the principal in some way, as by showing that the principal knew of them and assented to them, a different result ensues; and, where the acts are of such a public or intimate nature, so notorious, or so long continued as reasonably to justify the inference that the principal must have known of them, and would not have permitted them to continue if they were unauthorized, evidence of them is admissible as against the alleged principal." Mechem on Agency, sec. 289.

The fundamental idea, therefore, or seed grain, so to speak, of agency, has its conception in something lawful that a person may do, and a delegation by such person to another of the power lawfully to do that thing. So this agency has

XVII Ariz.—32

been catalogued according to its kind, as either general or special. The basic error of appellee's case is in giving a broader application to the term "general agency" than its significance warrants.

"If by express appointment, or by long acquiescence, recognition, or course of dealing, one man has conferred upon another the character of one possessing the requisite authority to represent him in a general way during some more or less continuous period in the transaction of all of his business of a certain kind, or at a particular place, or to perform all acts of a certain kind or class, he must be held to have conferred upon him the attributes and powers inherent in the character so bestowed. Such an agent the law denominates, for convenience sake, a general agent. But if, on the other hand, in a single instance, either by express terms or by his conduct, he confers upon the other the character of one having authority to do a single thing, perhaps in a specific way, he must be held to have conferred upon him those attributes and powers, and those only, which are inherent in that character. This agent, for the same convenience, is termed a special agent." Mechem on Agency, sec. 737.

The distinction ordinarily drawn between a general and special agency is often artificial and unsatisfactory. The scope of the authority of a special agent is ordinarily much more restricted than that of a general agent; but when it is said that "if the special agent exceeds his instructions the principal is not bound," while "if the general agent exceeds his instructions, the principal will be bound," the statement is entirely misleading. So far as the authority of an agent involves the rights of innocent third persons, who have relied upon the character bestowed upon the agent, the principal is bound equally by the authority which he actually gives and by that which by his own act he appears to give, and this is true, whether we call the agency a special or general one. The general agent's authority is not universal; it is not an unlimited one. He is not *alter ego,* but the exercise of his authority is limited to that which is expressly conferred, broadened by the apparent authority, upon which third persons exercising due care may rely, to all acts within the ordinary and usual scope of the business he was empowered to transact. In other words, every agency is so

far general that it must cover, not only the precise thing to be done, but whatever usually and rationally belongs to the doing of it. To be a general agent one does not have to be one of unlimited powers. As said by Mr. Mechem:

"It is none the less true, however, as has been seen, that the scope of the general agent's authority must not be exceeded. Each acting within the scope of the authority conferred binds his principal; each acting beyond that scope binds himself only or no one. But while these rules applying to the two classes are alike in kind, they differ, as has been shown, in degree. It is believed, however, that this difference is one of degree only, and not of principle." Mechem on Agency, sec. 742.

In a New York case Mr. Justice COMSTOCK says:

"There are in the books many loose expressions concerning the distinction between a general and special agency. The distinction itself is highly unsatisfactory, and will be found quite insufficient to solve a great variety of cases. It is not profitable to dwell upon that distinction. Underlying the whole subject there is this fundamental proposition: That a principal is bound only by the authorized acts of his agent. This authority may be proved by the instrument which creates it; and beyond the terms of the instrument, or of the verbal commission, it may be shown that the principal has held the agent out to the world in other instances as having an authority which will embrace the particular act in question. . . . But, in whichever way this is done, it cannot be limited by secret instructions of the principal on the one hand, nor can it be enlarged by the unauthorized representation of the agent on the other. These principles, I think, are elementary." *Mechanics' Bank* v. *New York & New Haven R. R. Co.*, 13 N. Y. 599.

An excellent statement of the matter is to be had in a quotation from 1 Minor's Institutes, 206, found in the case of *Cross* v. *Atchison T. & S. F. R. R. Co.*, 141 Mo. at page 147, 42 S. W. at page 679, as follows:

"Whether the authority be general or limited, the servant (agent) cannot charge the master (principal) if he exceeds it. He is, of course, more likely to transcend the bounds of a narrow than of an extended power; but the principle in either case is the same. Within his commission, he binds his

master (principal); beyond it, he does not. Whilst, then, we must distinguish clearly between a general agent and a special agent, it is not because there is a diversity in the leading principle which determines the master's (principal's) liability, but merely in order to adjust the actual measure of it.''

See, also, *Gore* v. *Canada Life Assur. Co.*, 119 Mich. 136, 77 N. W. 650.

The mere fact that one is dealing with an agent, whether the agency be general or special, should be a danger signal, and, like a railroad crossing, suggests the duty to ''stop, look and listen,'' and if he would bind the principal is bound to ascertain, not only the fact of agency, but the nature and extent of the authority, and in case either is controverted the burden of proof is upon him to establish it. In fine, he must exercise due care and caution in the premises.

''. . . Unusual and unnatural acts are not to be tolerated, strained constructions are to be avoided, inferences of facts are to be limited to those which are reasonable, natural and ordinary, and, as has been so often pointed out, inferences are to be drawn only from facts for which the principal is responsible, and not from mere considerations of convenience or policy. The mere fact that one is found to be a general agent justifies neither the court nor jury in guessing that given acts are within the scope of his authority.'' Id., sec. 740.

Conceding, for the purposes of this case only, that when Mr. Dunn employed the plaintiff to find a purchaser for the drug business, he was acting as the agent of Mrs. Brutinel, and not on his own account, a concession which is by no means justified as an inference from the disclosed facts, is the act in controversy fairly included within the limits, or as it is ordinarily stated, within the scope of Dunn's authority, either express or implied? If it is, the principal is bound; if it is not, the act of the agent binds himself alone or no one. In other words, do the facts and circumstances of this case justify this inference that Mr. Nygren was employed as the principal's agent under such circumstances as to reasonably warrant the conclusion that Mrs. Brutinel has taken the subagent as her agent and become liable for his compensation?

This inference is sought to be justified from the fact, and the only facts traceable in the record to any word or conduct of hers, that Mrs. Brutinel employed Mr. Dunn as her agent to manage the drug business, and during the course of such employment specially authorized him to offer the same for sale. Thus an express authority is given by the principal to Mr. Dunn to manage the drug-store, and this express authority carries with it every power necessary and proper to be done in the case in hand to effectuate the purpose for which the authority in question was created. Where nothing is indicated to the contrary, there are many things connected with such duties involving discretion, judgment and choice of methods that it would not be unreasonable for third persons dealing with such an agent to rely upon the presumption that he possessed those powers commensurate with his undertaking, and which are usually and properly exercised by other similar agents under like circumstances. In other words, it carries with it the implied power to do all those acts naturally and ordinarily done in such cases. But such an implied agency is not to be extended by construction beyond the obvious purposes for which it is apparently created. Clearly, such an agency cannot imply the authority in Mr. Dunn to employ a subagent to sell the drug-store, goodwill, and fixtures at the expense of Mrs. Brutinel, because such acts are not naturally and ordinarily done in such cases, and there is nothing in the record to show any usage and custom prevailing in similar cases, or any course of dealing between the parties, that would justify the extension of the agency to include any such power. So with the special authority given to Mr. Dunn to find a purchaser for the business. Here his authority was expressly limited to the power to find a purchaser satisfactory to the principal. From such authority it cannot be implied as a matter of law that Mr. Dunn had the power to bind his principal by an agreement to pay another commission for making a sale, because the agent must have special authority to bind his principal by the promise to pay commissions, and the evidence fails to disclose any fact, either by word or conduct, or any usage and custom prevailing in similar cases, or any course of dealing between the parties that would justify any presumption that Mrs. Brutinel authorized Mr. Dunn to perform the act in question, or that

she has by any conduct logically and rationally tending to that end led Mr. Nygren, who must himself exercise due care and caution in the premises, reasonably to believe that such authority had been conferred and accordingly to act upon such belief. In fine, the fact that Dunn was her general agent in managing the drug-store and her special agent to offer it for sale would not justify Mr. Nygren in guessing that the act of Mr. Dunn in employing him as subagent at the expense of Mrs. Brutinel was within the scope of Mr. Dunn's authority.

There is an utter failure to trace the source of his reliance, if he did so rely, to any word or act of the principal that would justify him in concluding that Mrs. Brutinel is liable by reason of her consent to, or concurrence in, the employment. Notwithstanding the difficulty in some cases of ascertaining the extent of an agent's power, the general rule is that a person dealing with an agent takes the risk. To the objection that no one would be willing to deal with an agent upon this basis Chief Justice SHAW said:

"This objection, we think, is answered by the consideration, that no one is bound to deal with the agent. Whoever does so is admonished of the extent and limitation of the agent's authority, and must, at his own peril, ascertain the fact, upon which alone the authority to bind the constituent depends. Under an authority so peculiar and limited, it is not to be presumed that one would deal with the agent, who had not full confidence in his honesty and veracity, and in the accuracy of his books and accounts. To this extent, the seller of the goods trusts the agent, and if he is deceived by him he has no right to complain of the principal. It is he himself, and not the principal, who trusts the agent beyond the expressed limits of the power; and therefore the maxim, that where one of two innocent persons must suffer, he who reposed confidence in the wrongdoer must bear the loss, operates in favor of the constituent, and not in favor of the seller of the goods." *Mussey* v. *Beecher*, 3 Cush. (57 Mass.) 511.

Concerning this "maxim" Mr. Mechem says:

"There are, as has elsewhere been pointed out, many loose statements to be found in the books to the effect that there is a general principle of the law that, where one of two innocent persons must suffer by the act of a third, that one should

bear the loss by whose act the loss was made possible, or who enabled the wrongful act to be committed, or who first reposed trust and confidence in the wrongdoer, and the like. As a matter of fact, notwithstanding these general statements, there is no such general principle as that which is thus declared. Like many other alleged maxims, this one contains only a half truth at most, and its use seems to be resorted to only to cover loose reasoning or to span a gap without noticing it." Mechem on Agency, sec. 1986.

But it is urged that Mrs. Brutinel is bound upon the doctrine of ratification. Ratification must necessarily rest upon knowledge of the facts or thing to be ratified. Knowledge of the facts and voluntary action, however, are as essential here as elsewhere, and the principal, by accepting what he was entitled to from the agent, in ignorance that a subagent had been employed, does not ratify his appointment. But, conceding that Dunn attempted to act for Mrs. Brutinel in employing Nygren, she was in entire ignorance of that fact when she consummated the sale with Riker and Robbins. See *Servant* v. *McCampbell*, 46 Colo. 292, 104 Pac. 394; *Rice* v. *Post*, 78 Hun, 547, 29 N. Y. Supp. 553; *Craver* v. *House*, 138 Mo. App. 251, 120 S. W. 686; *Ballentine* v. *Mercer*, 130 Mo. App. 605, 109 S. W. 1037; *Benham* v. *Ferris*, 159 Mich. 632, 124 N. W. 538; *Hanback* v. *Corrigan*, 7 Kan. App. 489, 54 Pac. 129; *Sims* v. *St. John*, 105 Ark. 680, 43 L. R. A. (N. S.) 796, 152 S. W. 284; *Carroll* v. *Tucker*, 2 Misc. Rep. 397, 21 N. Y. Supp. 952.

In one jurisdiction it is said: "The right of sale is one of the most valuable rights incident to the ownership of property, and it ought not to be restricted for other than cogent reasons. Unless some public interest or paramount private right renders a curtailment necessary, the owner of any character of property should have the unhampered right to sell it, with the entire world as a market. If another person, unauthorized by the owner, assists an agent in making a sale, is it right and just to hold that, if apprised of what has been done by such assistant or subagent, and the fact that the agent has promised compensation by the owner, the latter cannot accept the terms offered by the purchaser without becoming liable to such subagent? Under such circumstances, it cannot be claimed that the owner has misled the subagent;

nor will consummation of the sale without compensating him place him in any worse position than he would be in if the sale should be abandoned. It is true that one cannot adopt part of an unauthorized contract without adopting the whole; but the contract submitted to Mrs. Williams, and the one she adopted, was the contract for the sale of the land, and not the contract between Miller and Straub. It was not stipulated in the contract of sale that she should pay Straub for services rendered. It is true, when she adopted that contract, she had knowledge of the other contract and of the services rendered by Straub; but as the latter contract was unauthorized by her, as she had done nothing to induce Straub to render the services, as her consummating the sale without remunerating him would place him in no worse position than he was already in, and as she had the power and right, independent of that contract, to sell her land to the proposed purchaser, she had the right, in the forum of conscience as well as at the bar of the law, to accept the terms of the contract of sale without ratifying the contract between Miller and Straub, either upon the ground of adoption or estoppel." *Williams v. Moore,* 24 Tex. Civ. App. 402, 58 S. W. 953.

But this authority goes somewhat further than the holding in most jurisdictions as to what amounts to the ratification of an unauthorized contract, but under the facts of that case it may correctly be placed upon the failure to establish an agency by estoppel.

"The general rule of law is that if an agent, in the conduct of his agency, employs a subagent, without authority to bind his principal, expressly given or fairly presumptive from the particular circumstances or the usage of business, the subagent must look to his immediate employer for his pay, and has no claim for compensation against the agent's principal, between whom and the subagent no privity exists." *Jenkins* v. *Funk* (C. C.), 33 Fed. 915; *Jones* v. *Brand,* 106 Ky. 410, 50 S. W. 679; *Bonwell* v. *Howes,* 2 N. Y. Supp. 717; *Rice* v. *Post,* 78 Hun, 547, 29 N. Y. Supp. 553; *Atlee* v. *Fink,* 75 Mo. 100, 42 Am. Rep. 385; 2 C. J., p. 778, sec. 445; Mechem on Agency, sec. 1701.

Nor has the plaintiff established an estoppel, for he has not changed his situation to his detriment in reliance upon the principal's conduct.

"The estoppel works in favor of the third party who has dealt in good faith with the agent upon the strength of the representations made by the principal." 4 Modern American Law, p. 20, sec. 24.

The learned judge of the trial court misapprehended the law in his charge to the jury. In submitting the first instruction quoted, the right of the plaintiff to recover was not made to depend upon whether Mrs. Brutinel had agreed directly or indirectly to pay him a commission or not. The issue whether or not Mrs. Brutinel authorized Dunn either directly or indirectly to employ Nygren at her expense was so important that the jury should have been instructed to find a verdict for the defendant, if such employment was not so authorized, unless the employment, if unauthorized, was in some way ratified by Mrs. Brutinel. The agreement of Dunn with the plaintiff would not bind the defendant, unless she authorized him to contract for her or ratified the contract when made, or by reason of her representations to the plaintiff, who relied thereupon to his detriment, she is estopped to deny the employment.

The last instruction quoted is particularly prejudicial, for it excluded from the jury a consideration of the most important issue in the case, and in effect authorized the jury to determine whether in their judgment they thought it just or desirable that the defendant should be held liable in this case. No other parts of the charge did or could cure these errors.

"The court, however, in cases of this sort, should carefully instruct the jury as to their function in the matter, and as to the rules of law by which they are to be guided. That function is not to determine whether the jury think it might be just or desirable or appropriate or convenient that the alleged principal should be held in the given case, but to decide whether, according to the rules of law, the alleged principal has in fact by word or conduct authorized the assumed agent to perform the act in question, or has, by conduct rationally and logically tending to that end, led the other party, who has himself exercised due care and caution, reasonably to believe that such authority has been conferred and to act upon such belief. What the legal rules are which govern such situations should be explained by the court; and it is the duty of the jury to apply to the facts in the case the

rules of law given them by the court. It is not for juries to make the law of agency." Mechem on Agency, sec. 297.

Upon the uncontroverted evidence in the record the plaintiff's employment was by Dunn, and between the plaintiff and defendant no privity, express or implied, exists, and neither by ratification nor estoppel is she under any obligation to compensate him. To sustain the judgment in this case it would be necessary to hold that the jury in arriving at their verdict have a legal right, in the absence of any evidence in regard thereto, to conjecture and assume necessary and controlling facts, which, under the law, is beyond the province of a jury. The plaintiff may have a valid claim for remuneration. If he has, the wrong defendant has been selected to pay it. It follows, from the views we have expressed, that the request for an instructed verdict should have been given. On the facts contained in the record, no judgment should have been rendered against the defendant.

For the reasons given, the judgment is reversed and the cause remanded for proceedings consistent herewith.

ROSS, C. J., and CUNNINGHAM, J., concur.

On the power of a real estate broker to delegate his authority, see note in 43 **L. R. A.** (N. S.) 796.