348 P.2d 296

**BANK OF AMERICA, NATIONAL TRUST AND SAVINGS ASSOCIATION, Appellant,**

**v.**

**Edna B. BARNETT; Glenn Draper et ux.; L. B. Hunter et ux.; Manuel L. Marinez, et ux.; John A. Taylor et ux.; Young Davis et ux.; Fred Hill et ux.; Joe G. Larra et ux.; Benny Mendoza et ux.; Clayton I. Roberts et ux.; Carlos De LaOssa et ux.; Thomas Hopkins et ux.; LeRoy Hunter et ux.; Jesus M. Pesquiera et ux.; Joe M. Pineda et ux.; Robert O. Robles et ux., Appellees.**

No. 6534.

Supreme Court of Arizona.

Jan. 13, 1960.

Hirsch & Van Slyke, and S. Rita Goldstein, Tucson, for appellant.

Perry A. Devere, Fickett & Dunipace, Toby La Vetter, Lee H. Brown, and McKay & McKay, Tucson, for appellees.

BERNSTEIN, Justice.

This is a consolidated appeal by the Bank of America, National Trust and Savings Association (hereinafter called "the Bank") from judgments dismissing its several actions to recover on sixteen negotiable promissory notes executed by the individual appellees. Each of the appellees, and his spouse, executed a separate note and all of them maintain the same position on this appeal. The Superior Court of Pima County, after a consolidated trial before the court without a jury, held that the Bank was not a holder in due course of any of the notes which it accepted after it had learned that the consideration for the notes had failed, and held, further, that as the Bank acquired the notes through endorsement by a foreign corporation which had not qualified to do business in Arizona, the notes were void and recovery could not be had thereon.

The notes in issue were made by the several appellees between January 1952 and January 1953, all payable to the order of Colonial Construction Company (hereinafter called "Colonial"), in consideration of certain construction work to be performed by Colonial. Each of the notes was thereupon endorsed without recourse by Colonial to the order of United Credits Corporation (hereinafter called "United"), a California corporation not qualified to do business in Arizona. Within a few days thereafter, United endorsed each note in blank and delivered it to the Bank in California.

There is no question but that the Bank is entitled to judgment on the notes as holder thereof in due course unless it had notice of any infirmities in the notes, within the meaning of A.C.A.1939, §§ 52–139, 52–142 (now A.R.S. §§ 44–452, 44–456), or unless the notes were void in accordance with A.C.A.1939, § 53–802 (now A.R.S. § 10–482).

On the first point the trial court found that the construction work performed by Colonial "was unsatisfactory and practically worthless; that therefore, there was a total failure of consideration for the notes," and that as the Bank had knowledge of these facts on July 1, 1952, it was not a holder in due course as to any notes negotiated in its favor after that date. We have reviewed the record in this case with great care and can find no evidence to support the conclusion that the Bank, at any time prior to its acceptance of the last note in issue, had such actual or constructive notice of the asserted failure of consideration so as to deprive the Bank of the status of holder in due course (see A.C.A.1939, §§ 52–139, 52–142; now A.R.S. §§ 44–452, 44–456).

There is no evidence that the transactions were not bona fide on the part of the Bank, and the fact that the Bank retained United as its collection agent in Arizona, does not, per se, bind the Bank with any conduct or knowledge on the part of United respecting the original consideration for the notes. Appellees contend that because United and Colonial at one time had adjoining offices and were "close," United is presumed to have known that the construction work was worthless, and that the Bank is presumed to have the knowledge attributed to United, as its collection agent. Even assuming that United and Colonial, as claimed, were merely two aspects of the same operation in Arizona, it does not follow in the circumstances of this case that such knowledge may thus be imputed, in two stages, to the Bank. First, there is no evidence that the Bank knew or should have known that United was an "alter ego" of Colonial. Second, United acted only as the Bank's *collection* agent, and—because United was a prior holder of the notes and liable thereon in case of default and had, in fact, made warranties to the Bank at the time it endorsed the notes in blank, which warranties are in conflict with the knowledge which it is presumed to have had (see A.C.A.1939, § 52–148; now A.R.S. § 44–466)—the position of United was, in all other respects, adverse to that of the Bank. See Hays v. Bank of America, 57 Ariz. 8, 110 P.2d 235; Restatement, Agency § 279.

Nor does a complaint about the work performed by Colonial, made over the telephone to an official of Colonial who was then at the Bank, or to an unidentified person who answered a call directed to the

Bank, constitute sufficient evidence of knowledge on the part of the Bank of an infirmity in the notes (see Lois Grunow Memorial Clinic v. Davis, 49 Ariz. 277, 66 P.2d 238).

Appellees rely, in the main, on testimony to the effect that in July 1952 three men, holding themselves out as representatives of Colonial, United and the Bank, respectively, were told by some of the appellees and others that the construction work, which was the consideration for the notes, was being performed improperly and inadequately. Whether or not such information, if given to the Bank, would constitute notice of an infirmity in the notes (A.C.A.1939, § 52–142; now A.R.S. § 44–456), there was no competent evidence to prove that the self-styled Bank representative was in fact an agent of the Bank. Testimony by third parties of statements of a purported agent constitutes hearsay and is, without more, insufficient to prove the alleged agency in issue.

In the early case of Brutinel v. Nygren, 17 Ariz. 491, 154 P. 1042, L.R.A. 1918F, 713, this Court recognized the rule, applicable herein,

" '* * * that an agent cannot create in himself an authority to do a particular act by its performance; and that the authority of. an agent cannot be proved by his own statement that he is such.' * * *

" * * * [T]he nature and extent of an agent's authority * * * ultimately may be established only by tracing it to its source in some word or act of the alleged principal. The agent certainly cannot confer authority upon himself, or make himself agent, merely by acting as such, or saying that he is one. * * *

" 'The agent's authority, moreover, may not be shown merely by proving that he acted as agent. A person can no more make himself agent by his own acts only than he can by his own declarations or statements. * * *' Mechem on Agency, § 289." (17 Ariz. at page 497, 154 P. at page 1044.)

In United States Smelting, Refining & Mining Exploration Co. v. Wallapai Mining and Development Co., 27 Ariz. 126, 130, 230 P. 1109, 1110, this Court stated:

" * * * The rule is well established, not only in this state but elsewhere, that the declarations of an alleged agent are not evidence of the fact of agency, nor the extent thereof.

" 'The agency must be proved by other evidence before his (the agent's) acts and statements can be shown against the principal. At best such declarations are mere hearsay. The rule applies equally to oral statements of the agent and the written state-

ments, contained in letters, letter-heads, receipts, or other documents implying, admitting, or claiming authority to act as agent in the negotiations with the third person.' 31 Cyc. 1652."

Accord: Navajo-Apache Bank & Trust Co. v. Willis, 21 Ariz. 610, 193 P. 297; Litchfield v. Green, 43 Ariz. 509, 33 P.2d 290; Cameron v. Lanier, 56 Ariz. 400, 108 P.2d 579; cf. Harman v. Byrd, 80 Ariz. 266, 296 P.2d 717.

Particularly significant is the following statement in Brutinel v. Nygren, supra, quoted with approval in Lois Grunow Memorial Clinic v. Davis, supra, 49 Ariz. at page 285, 66 P.2d at page 242:

" 'The mere fact that one is dealing with an agent, whether the agency be general or special, should be a danger signal, and like a railroad crossing suggests the duty to "stop, look, and listen," and if he would bind the principal is bound to ascertain, not only the fact of agency, but the nature and extent of the authority, and in case either is controverted the burden of proof is upon him to establish it. In fine, he must exercise due care and caution in the premises. * * *' "

Accordingly, such notice as may have been given to the purported bank representative in July 1952 is not binding upon the Bank in the absence of competent evidence that such representative was in fact a duly authorized agent of the Bank. Testimony by third parties of extra-judicial, hearsay declarations attributed to the purported agent is, of course, distinguishable from testimony by the alleged agent himself as to the existence or terms of his relationship with his principal. See Daly v. Williams, 78 Ariz. 382, 386, 280 P.2d 701.

We hold that the trial court erred in concluding that the Bank was not a holder in due course of the notes in issue as there was no competent evidence to sustain such a finding.

The second ground urged in support of the judgment below is that, whether or not the Bank is a holder in due course, the notes held by it are void because they were negotiated to the order of United, concededly a California corporation not qualified to do business in Arizona, and were subsequently endorsed by United in favor of the Bank. This defense is based on the provisions of A.C.A.1939, § 53–802 (now A.R.S. § 10–482) which provided:

"No foreign corporation shall transact any business in this state until it has complied with the requirements of the preceding section [relating to qualification by foreign corporations], and every act done by said corporation prior thereto shall be void."

The Bank asserts that this defense is without merit because the instant trans-

actions were not performed by United in Arizona and because the Bank, as a holder in due course, is free from any defect in the title of United.

It appears from the record that although the notes were initially processed by an employee of United in Arizona, they were approved and accepted in California. Further, the negotiation of the notes by United to the Bank also took place in California pursuant to agreements, apparently entered into in California, whereby the Bank credited United's account for the notes so endorsed. Thus, it is clear that whether or not United may generally, or in some respects, have been doing business in Arizona, the transactions relating to the notes in question were not performed in this State. The indispensability of this latter requirement was pointed up in Monaghan & Murphy Bank v. Davis, 27 Ariz. 532, 234 P. 818, where this Court stated:

> "It was, of course, necessary for defendant to prove affirmatively that plaintiff was engaged in business in Arizona, within the meaning of our statute, *and also that the particular act claimed to be void was done therein.*" (27 Ariz. at page 535, 234 P. at page 819.) (Emphasis added.)

In the Monaghan case the defendant had made arrangements in California to assume an indebtedness owed by a third party to the plaintiff, a California corporation not qualified to do business in Arizona. The note and mortgage evidencing these arrangements were prepared, dated and made payable in California. These documents were executed by defendant in Arizona where the mortgage, which covered cattle located in Arizona, was filed. The Court in reversing judgment in favor of defendant stated:

> "The only course of business contended by defendant to have been conducted by plaintiff in Arizona is the loaning of money, and the particular act which is claimed to be void is the transaction whereby defendant and her decedent assumed the Graves' indebtedness. Defendant was therefore required to prove a general course of loaning money by plaintiff in Arizona to an extent sufficient to bring the latter within the definition laid down in the Martin and Nicolai cases, and also that the particular indebtedness arose in Arizona.

> "* * * The general rule is that the act of giving the mortgage is a mere incident to the transaction, and is not within the statute; the place of the creation of the indebtedness being the real test." (27 Ariz. at page 536, 234 P. at page 819.)

The holding and rationale of the Monaghan case are particularly applicable here and we hold that, with respect to the instant notes, United did not "transact any

business in this state" within the meaning of A.C.A.1939, § 53–802 (now A.R.S. § 10–482).

Nor is there any evidence to support the finding that the Bank knew or had reason to know that the prior holder may have violated the law of Arizona or, indeed, knew of any "defect in the title" of United (see A.C.A.1939, §§ 52–139, 52–142; now A.R.S. §§ 44–452, 44–456).

A.C.A.1939, § 52–143 (now A.R.S. § 44–457), provided:

"A holder in due course holds the instrument free from any defect to title of prior parties, and free from defenses available to prior parties among themselves, and may enforce payment of the instrument for the full amount thereof against all parties liable thereon."

To hold that a holder in due course of a negotiable instrument is subject to defenses based upon a "defect to title of prior parties" or to defenses "available to prior parties among themselves," such as are claimed here, would conflict with the plain meaning and manifest purpose of A.C.A.1939, § 52–143 (now A.R.S. § 44–457). See Annotation, 1921, 12 A.L.R. 1379; cf. Sandia Development Corp. v. Allen, 86 Ariz. 40, 340 P.2d 193.

The judgment is reversed with directions for the trial court to enter judgment in favor of appellant Bank of America, National Trust and Savings Association, except as to defendant John A. Taylor, in Case No. 46861, who it was stipulated had died prior to the decision below (see Rules 25(a) and 54(e) of the Rules of Civil Procedure, 16 A.R.S.).

STRUCKMEYER, C. J., and PHELPS, UDALL, and JOHNSON, JJ., concurring.