526 P.2d 770

Floyd HUDLOW, Appellant,

v.

**AMERICAN ESTATE LIFE INSURANCE COMPANY and R. Neil Barnes,**
Appellees.

**No. I CA–CIV 2303.**

Court of Appeals of Arizona,
Div. 1.

Sept. 26, 1974.

Rehearing Denied Nov. 1, 1974.

O'Connor, Cavanagh, Anderson, West-over, Killingsworth & Beshears, by Ralph E. Hunsaker, Phoenix, for appellant.

Trew & Woodford, by Wilmot W. Trew, Phoenix, for appellees.

## OPINION

KRUCKER, Judge.

This appeal challenges the propriety of granting a motion for directed verdict in favor of the appellees. Appellant instituted an action against American Estate Life Insurance Company and R. Neil Barnes for breach of an oral contract of employment.

■ In reviewing a motion for a directed verdict, we examine the evidence in a light most favorable to the opponent. Mutz v. Lucero, 90 Ariz. 38, 365 P.2d 49 (1961). Having reviewed the record accordingly, we hold that the trial court properly granted the motion for directed verdict.

The facts of the case are that in December of 1971, the appellant was living with his wife and family in Atlanta, Georgia. He was employed by an insurance company as a salesman. Wishing to move to Phoenix, Mr. Hudlow sought a job interview with the defendant, Mr. Barnes, Vice President and Director of Brokerage of co-defendant American Estate.[1] This initial meeting occurred on December 21, 1971, and was followed by two additional meetings.

The last of the meetings between Mr. Hudlow and Mr. Barnes was held at a Holiday Inn on December 30, 1971. Mr. Hudlow testified that Mr. Barnes offered

him a position as his assistant with American Estate at a salary of $950.00 per month and a raise to $1,000 after three months if his work was satisfactory. Additionally, moving expenses up to $900.00 were to be paid by American Estates. If Mr. Hudlow terminated his employment within one year he would be required to repay the $900.00 for moving expenses. The duration of the period of employment was never specifically determined.

In his testimony, Mr. Barnes did not dispute these terms except as to the initial monthly salary. His understanding was that Mr. Hudlow would start at $900.00 per month as opposed to $950.00 and that employment was subject to approval by the Board of Directors.

It was agreed that Mr. Hudlow was to respond within one week to this oral offer. Mr. Hudlow testified that on January 6, 1972, he called Mr. Barnes from Atlanta to accept the job and indicated he could start work on February 1, 1972. Allegedly, Mr. Barnes responded affirmatively to Mr. Hudlow's acceptance. However, Mr. Barnes testified that at this time he informed the appellant that the Board of Directors of American Estate had not approved an enlarged budget and therefore the position was not yet available.

Thereafter, the appellant moved his family to Phoenix. Upon finding he did not have a job with American Estate, he sought and obtained employment elsewhere in Phoenix.

The trial court granted the motion for directed verdict on the following grounds. First, the appellant failed to establish the extent of Mr. Barnes' authority and whether it was sufficiently broad to bind American Estate. Phoenix Western Holding Corporation v. Gleeson, 18 Ariz.App. 60, 500 P.2d 320 (1972). Second, the appellant failed to establish the requisite elements of a contract with a sufficient degree of certainty. Shun v. Hospital Benefit Association, 89 Ariz. 12, 357 P.2d 603 (1960).

---

1. The testimony indicates that Mr. Hudlow was not seeking an insurance salesman position. Rather, he wanted to obtain a managerial position with the company.

Third, the alleged contract could be terminated at the will of either party and therefore was invalid because of a lack of mutuality of obligation.

## WAS THERE AUTHORITY TO HIRE?

■ We find on review that there was not sufficient evidence indicating that Mr. Barnes had the requisite authority to bind American Estate to an oral contract of employment. As to this fundamental issue, the appellant does not argue that Mr. Barnes, as Vice President and Director of Brokerage for American Estate, had express or implied authority to hire anyone.[2]

Appellant's contention is that Mr. Barnes had apparent authority to enter a binding oral agreement. This argument is based on the following points. First, Mr. Barnes' position appears to give him authority which the appellant could rely upon. Second, Mr. Lowry, President of American Estate Life, admitted to briefly meeting appellant and learning later that Mr. Barnes had interviewed appellant for a position as an assistant. Third, Mr. Barnes made representations in such a way so as to reasonably suggest he had authority to hire the appellant. Fourth, the totality of the circumstances suggest that American Estate induced Mr. Hudlow to believe that Mr. Barnes had authority to hire Mr. Hudlow.

■ This line of argument misses the point as to what constitutes apparent authority as distinguished from implied or express authority. The Restatement (Sec-ond) of Agency § 8, § 27, and § 49 (1957), indicates that as to apparent authority the principal must make some manifestation to the third party which could reasonably be relied upon to indicate that the agent had the alleged authority. The facts in the present case fail to disclose any acts or statements by Mr. Lowry and American Estate which could reasonably infer any authority on the part of Mr. Barnes to hire an assistant.[3]

■ No evidence was admitted to indicate that it is customary either in the insurance business generally or at American Estate for an individual occupying Mr. Barnes' position to impliedly have such authority. The appellant emphasizes that Mr. Barnes signed contracts with insurance salesmen giving them authority to sell insurance for American Estate. However, the testimony shows that these salesmen were not employees but rather independent agents who worked on a commission basis. Express or implied authority to enter this type of contract does not infer authority to enter a contract of an entirely different nature, i. e., an employment contract.

Nor are we persuaded by the argument that the introduction of Mr. Lowry to the appellant by Mr. Barnes, upon initially applying for employment, reasonably inferred that Mr. Barnes had authority to hire. The meeting appears to have been little more than a brief and perfunctory social introduction. Assuming Mr. Lowry acquiesced subsequently to his agent's act of conducting an employment interview, we do not regard this as reasonably supportive of an inference of authority to also hire.

2. Mr. Barnes did not have a written contract specifying exactly what his duties were. The testimony indicates that as Vice President and Director of Brokerage he signed contractual agreements between American Estate Life Insurance Co. and licensed insurance agents to sell policies on commission. He was authorized to sign licensing agreements with state insurance departments. And, on one occasion, he had been allowed to hire his own secretary.

3. Appellant and appellees have referred in their arguments to Mr. Barnes as an agent of American Estate. We suspect that it would be more appropriate to regard Mr. Barnes as an employee. Regardless of his status, we believe the doctrine of apparent authority to be applicable in either case. Alterman v. Lydick, 241 F.2d 50 (CA 7th 1957); Globe Indemnity Company v. Victill Corporation, 208 Md. 573, 119 A.2d 423 (1957); Fox v. Morse, 255 Minn. 318, 96 N.W.2d 637 (1959); Annot., 2 A.L.R.2d 406 (1948); cf., Annot., 53 Am.Jur.2d § 429 (1970).

■ As to the third point, we may not look to the statements of the agent as to the extent of his authority. Bank of America, National Trust and Savings Association v. Barnett, 87 Ariz. 96, 348 P.2d 296 (1960); Phoenix Western Holding Corporation v. Gleeson, supra. The clear objective of this rule is to prevent the agent from clothing himself with authority which has not been bestowed upon him and imposing liability on an innocent principal.[4]

■ Regarding appellant's final argument, it seems appropriate to recall that a third party dealing with a known agent has a responsibility to exercise reasonable diligence in ascertaining the extent of the agent's authority. 3 Am.Jur.2d § 78, citing Brutinel v. Nygren, 17 Ariz. 491, 154 P. 1042 (1916). Mrs. Hudlow testified that when her husband spoke to Mr. Barnes by telephone from Atlanta accepting the alleged offer, he said " . . . you will send me papers confirming this." No papers were forthcoming and the fact that the appellant requested written confirmation from American Estate strongly suggests that he was not relying solely upon the alleged apparent authority of Mr. Barnes. Instead, it appears that the appellant expected some express acknowledgment of the agreement from American Estate and elected to move his family without having received it.

## ADMISSIBILITY OF EVIDENCE

■ Appellant sought to introduce a library card application filled out by Mrs. Hudlow indicating that her husband was employed by the defendant. The defendant objected and the trial court sustained the objection.

On review, we hold that there was no error. The evidence appears to be immaterial. At best the evidence only reflects on Mrs. Hudlow's state of mind regarding her

husband's employment. Secondly, the Hudlows' state of mind is not questioned by the appellee. Rather, the question is whether the evidence established a contract which would justify their state of mind.

The judgment is affirmed.

HATHAWAY, C. J., and HOWARD, J., concur.

NOTE: This cause was decided by the Judges of Division Two as authorized by A.R.S. § 12–120(E).

---

4. The remedy for a party injured by such an agent is to sue for breach of an implied warranty of authority. Lois Grunow Memorial Clinic v. Davis, 49 Ariz. 277, 66 P.2d 238 (1937); Restatement (Second) Agency §§

329, 330 (1958). In the present case the plaintiff failed to allege a cause of action on this ground and on appeal appellant directs all of its arguments toward the liability of American Estate alone.