870 P.2d 1202

**The HARTFORD, Petitioner Carrier,**

**Project Engineering Consultants, Petitioner Employer,**

v.

**The INDUSTRIAL COMMISSION OF ARIZONA, Respondent,**

**Todd M. Sinclair, Respondent Employee.**
**No. 1 CA–IC 93–0027.**

Court of Appeals of Arizona,
Division 1, Department D.

March 22, 1994.

Jones, Skelton & Hochuli by Charles G. Rehling, II and Calvin Harris, Phoenix, for petitioner carrier/employer.

Anita R. Valainas, Chief Counsel, Indust. Comm'n of Arizona, Phoenix, for respondent.

The Ranger Law Firm by Myles P. Hassett, Phoenix, for respondent Employee.

## OPINION

GERBER, Presiding Judge.

Respondent employee Todd Sinclair (Sinclair) sustained an injury to his left leg in August 1988 while working for petitioner employer Project Engineering Consultants (PEC). This injury was caused in a pedestrian/motor vehicle accident involving a negligent third party. PEC was insured by petitioner carrier The Hartford (Hartford). Sinclair filed a claim for workers' compensation benefits which Hartford accepted.

While Sinclair was on temporary disability status for his leg injury, Myles Hassett (Hassett), his attorney in the third party litigation, settled that cause for the sum of $50,000. Hassett and Barbara Sweet (Sweet), a workers' compensation claims adjuster employed by Hartford, then held negotiations regarding distribution of the settlement funds. In a February 9, 1990 letter responding to Sweet, Hassett wrote to her to confirm their agreement about disbursement of funds. The letter provided that Sinclair would receive $12,500 of the settlement and Hartford would deduct a credit of $50 per month from Sinclair's loss of earnings compensation. After receipt of this letter, Hartford began to withhold $50 from each monthly loss of earnings payment to Sinclair, and continued to do so for four or five months until his medical condition became stationary.

Sinclair's injury was found medically stationary on June 15, 1990 with permanent impairment of 25 percent of the left lower extremity. Pursuant to a notice of permanent disability, Hartford paid Sinclair a scheduled award in a lump sum settlement of $13,148.50. Hartford also provided Sinclair with supportive medical maintenance benefits. Hartford did not ask that Sinclair continue with the $50 per month repayment schedule negotiated by Sweet and Hassett.

In September 1991, Sinclair filed a petition to reopen which Hartford denied. He requested a hearing before the Industrial Commission of Arizona (Commission) to protest the denial of reopening. He also alleged a breach of the agreement between the parties regarding the credit against future compensation benefits because Hartford sought to apply its future credit to his accruing medical expenses. At the hearings, the parties stipulated to the need for reopening the claim but disputed the nature of the original agreement about the $12,500 future credit.

The Administrative Law Judge (ALJ) heard testimony from Sinclair, Sweet and Willa Nixon, Sweet's supervisor at Hartford. The ALJ found that the parties had entered a valid contract. The ALJ found that Sweet had the apparent authority of Hartford and that Sinclair and Hassett reasonably relied on her apparent authority. Hartford's future credit was limited to the taking of $50 per month from any temporary total, temporary partial or any additional permanent disability benefits to which Sinclair would be entitled subsequent to his petition to reopen. Because the agreement was limited to these non-medical expenses, the ALJ found the future credit was not to be taken from Sinclair's medical expenses.

Hartford petitions this court to review the ruling of the Commission. The sole issue presented is whether an agreement existed between the parties regarding the type of benefits against which to apply the future credit of $12,500.

As the trier of fact, the ALJ must resolve conflicts in testimony where the existence of a contract is in issue. *See Pre–Fit Door, Inc. v. Dor–Ways, Inc.*, 13 Ariz.App. 438, 441, 477 P.2d 557, 560 (1970). Validity and enforceability of stipulations and settlement agreements in workers' compensation cases are resolved under contract principles. *Pacific Western Constr. Co. v. Industrial Comm'n*, 166 Ariz. 16, 19, 800 P.2d 3, 6 (1990). On appeal, this court views the evidence in a light most favorable to upholding the Commission. *Perry v. Industrial Comm'n*, 112 Ariz. 397, 398, 542 P.2d 1096,

1097 (1975). The petitioner has the burden of demonstrating that the Commission was in error. *Bergstresser v. Industrial Comm'n,* 118 Ariz. 155, 157, 575 P.2d 354, 356 (App. 1978). We will affirm the decision if it is supported by any reasonable interpretation of the evidence. *Perry,* 112 Ariz. at 398–99, 542 P.2d at 1097–98.

## DISCUSSION

### Apparent Authority

■ The ALJ found that Sweet had apparent authority to bind Hartford to the agreement despite her testimony that she had neither actual authority nor the intent to bind Hartford. In the absence of explicit communication of authority, apparent authority exists where a third person reasonably believes an agent has the authority of the principal. Restatement (Second) of Agency, § 8, cmt. a (1958). As to apparent authority, "the principal must make some manifestation to the third party which could reasonably be relied upon to indicate that the agent had the alleged authority." *Hudlow v. American Estate Life Insurance Co.,* 22 Ariz.App. 246, 248, 526 P.2d 770, 772 (1974); Restatement (Second) of Agency, §§ 8, 27, 49 (1958).

■ Sweet was employed by Hartford. She was presented to the parties by Hartford as its agent. Over a period of months, on behalf of Hartford, she negotiated with Hassett regarding disbursement of the settlement funds. At no time did she or her supervisor inform Hassett or Sinclair of any limitation on her settlement authority or on her ability to bind Hartford to any agreement. Neither she nor her supervisor informed Hassett or Sinclair that she disagreed with the agreement contained in the February 9, 1990 letter. In fact, Hartford began deducting $50 pursuant to the agreement immediately after receipt of the letter, suggesting Hartford's acknowledgement of her authority to bind it. The record indicates a substantial basis for the ALJ's finding that Hassett and Sinclair had good reason to believe that Sweet had the authority to bind Hartford. We find no error in the ALJ's conclusion that Sweet had apparent authority.

### The Agreement

■ Hartford correctly notes that a carrier that has paid workers' compensation benefits has a lien and future credit on the net recovery of a third-party claim. *Hendry v. Industrial Comm'n,* 112 Ariz. 108, 109, 538 P.2d 382, 383 (1975), *cert. denied,* 424 U.S. 923, 96 S.Ct. 1133, 47 L.Ed.2d 332 (1976). The net recovery is the entire settlement less necessary collection expenses including attorney's fees. *See* Ariz.Rev.Stat.Ann. ("A.R.S.") § 23–1023(C) (1983). The future credit can be applied to compensation benefits including medical benefits, disability benefits, and death benefits. *Mannel v. Industrial Comm'n,* 142 Ariz. 153, 156, 688 P.2d 1045, 1048 (App.1984), *cert. denied,* 469 U.S. 1212, 105 S.Ct. 1183, 84 L.Ed.2d 331 (1985); *see also* A.R.S. § 23–901(4) (Supp.1993).

However, nothing prohibits the parties from making agreements to limit how that future credit will be applied. The parties could even agree that the carrier waive this lien and have no credit against future benefits. *Polito v. Industrial Comm'n,* 171 Ariz. 46, 47 & fn. 1, 828 P.2d 182, 183 & fn. 1 (App.1992).

As to the alleged crediting agreement, Hartford raises the following defenses: 1) lack of consideration, 2) mistake, 3) statute of frauds, and 4) lack of mutual assent. We discuss each in sequence.

### Lack of Consideration

■ "Adequate consideration consists of any performance which is bargained for ... and courts do not ordinarily inquire into the adequacy of consideration." *Carroll v. Lee,* 148 Ariz. 10, 13–14, 712 P.2d 923, 926–27 (1986) (citation omitted). Hartford was entitled to a lien against the net proceeds of the settlement, i.e., the settlement less attorney's fees and expenses. According to an August 24, 1989 letter sent to Sweet from Hassett, the attorney's fees and expenses in the third-party litigation amounted to $20,450 of the $50,000 settlement, leaving Hartford net proceeds of $29,550. Hartford had already received $20,000 of the settlement. It would have a future credit for $12,500 under the agreement. In consideration for the install-

ment repayment method of monthly $50 deductions, Hartford was to receive $2,950 more than allowed by its lien. We concluded that Hartford received adequate consideration.

### Statute of Frauds

■ Any objection to the agreement based on the statute of frauds was waived by Hartford's part performance in deducting $50 from the loss of earnings payments for four or five months in conformity with the agreement. *Gene Hancock Constr. Co. v. Kempton & Snedigar Dairy*, 20 Ariz.App. 122, 125, 510 P.2d 752, 755 (1973); A.R.S. § 44–101.

### Mutual Mistake

■ In Arizona a contract may be rescinded when there is a mutual mistake of material fact. *Renner v. Kehl*, 150 Ariz. 94, 96–97, 722 P.2d 262, 264–65 (1986). A mutual mistake exists where there has been a meeting of the minds of the parties and an agreement is actually entered into, but the agreement contains a mistake regarding an essential part of the contract. *Id.* at 97, 722 P.2d at 265; *Hill–Shafer Partnership v. Chilson Family Trust*, 165 Ariz. 469, 473, 799 P.2d 810, 814 (1990). If Hassett and Sweet had both entered into the agreement because they believed that Sinclair was going to receive a long-term loss of earning capacity award and neither side had assumed the risk of this condition not happening, the agreement could be rescinded as a mutual mistake if Sinclair did not receive such an award. Hartford does not argue that Hassett and Sweet had an agreement with a material mistake about an essential condition. Instead, Hartford argues that Hassett and Sweet had different understandings of the same material provision of the agreement. This alleged mutual misunderstanding is not a mutual mistake but may constitute a lack of mutual assent, which is discussed below.

### Unilateral Mistake

■ Sweet testified that she was unaware at the time of negotiating the agreement that Hartford's future credit could be applied to Sinclair's medical expenses. This misunderstanding is a unilateral mistake at best. "A mistake of only one of the parties to a contract in the expression of his agreement or as to the subject matter does not affect its binding force and ordinarily affords no ground for its avoidance, or for relief, even in equity." *Nationwide Resources Corp. v. Massabni*, 134 Ariz. 557, 564–65, 658 P.2d 210, 217–18 (App.1982). A party will be relieved from an agreement based on unilateral mistake only if the other party knew of and unfairly took advantage of the other party's error. *Georgia–Pacific Corp. v. Levitz*, 149 Ariz. 120, 122, 716 P.2d 1057, 1059 (App.1986). Hartford has presented no such evidence and we cannot grant it relief on this basis.

### Lack of Mutual Assent

■ Hartford also claims the agreement should fail for lack of mutual assent because 1) the terms of the agreement are ambiguous and 2) a mutual misunderstanding prohibited the parties from coming to a "meeting of the minds" on the material terms of the agreement.

#### 1. Ambiguous Language

Whether a contract is ambiguous is a question of law. *University Realty & Development Co. v. Omid–Gaf Inc.*, 19 Ariz.App. 488, 491, 508 P.2d 747, 750 (1973). Any ambiguity is subject to a factual determination concerning the intent of the parties and is to be resolved conclusively by the trier of fact. *United California Bank v. Prudential Ins. Co. of America*, 140 Ariz. 238, 260, 681 P.2d 390, 412 (App.1983).

■ The alleged ambiguous term is the language in the February 9, 1990 letter that "Mr. Sinclair will fulfill this credit arrangement by allowing a deduction of $50 per month from his loss of earnings compensation." Hartford contends that loss of earnings compensation was a legal and factual impossibility in this case and therefore that this term was ambiguous. Hartford seems to make the argument that "loss of earnings compensation" as used in the letter could only indicate unscheduled permanent disability payments, and, it adds, the fact that Hart-

ford began deducting $50 from the temporary disability payments demonstrates the ambiguity of the agreement.

Contrary to the position of Hartford, temporary total, temporary partial and permanent partial disability compensation payments are all based on loss of earning capacity. *Madrid v. Industrial Comm'n*, 156 Ariz. Adv.Rep. 71, 73 (App. January 20, 1994); A.R.S. §§ 23–1044(A), (C), 23–1045(A), (B) (Supp.1993).[1] We do not find this part of the agreement ambiguous.

■■■ Although Hartford does not urge it as an ambiguous term, we note that the lack of a termination date for the $50 deductions could be construed as ambiguous. At $50 per month it would take over 20 years to recoup $12,500 in future credits. The agreement could be seen as intending to require over 20 years to apply the future credits, or it could be seen as ambiguous on that point. When an ambiguity exists, we defer to the ALJ's decision regarding the intent of the parties and will affirm the award if it is supported by any reasonable interpretation of the evidence. *Pena v. Industrial Commission*, 140 Ariz. 510, 513, 683 P.2d 309, 312 (App.1984). While the agreement is hardly favorable to Hartford, because an award of such duration may have been unlikely, the ALJ had a sufficient factual basis to conclude that this result was truly intended by the parties. We do not find that the ALJ erred about the agreement's alleged ambiguity, particularly in light of Hartford's election to forego this termination issue on appeal.

## 2. Mutual Misunderstanding

■■■ Lack of mutual assent based on mutual misunderstanding differs from mutual mistake. In the former, no distinct intent common to both parties exists so that all material terms in the contract are assented to. In the latter, both parties mutually assent to the terms but both are mistaken about a material part of the contract. A distinct intent common to both parties must exist for a contract, and until all understand alike there can be no contractual assent. *Hill–Shafer Partnership*, 165 Ariz. at 473, 799 P.2d at 814.

■■■ Hartford argues that the agreement lacked mutual assent because each of the parties attached different meanings to the language. Sweet testified that her idea of what the letter meant was dramatically different from Hassett's idea. She stated that she believed that the $50 per month credit applied only to the temporary total disability benefits but did not bind Hartford beyond the date the medical condition was found stationary.

■■■ Mutual assent is based on objective evidence, not on the hidden intent of the parties. *Lerner v. Brettschneider*, 123 Ariz. 152, 155, 598 P.2d 515, 518 (App.1979). As stated above, the ALJ may have found the language unambiguous in the letter of February 9, 1990. We may find a lack of mutual assent even with clear language if the language has a dual meaning or if extrinsic facts could create "a latent ambiguity in otherwise clear and intelligible language." *Hill–Shafer Partnership*, 165 Ariz. at 474–75, 799 P.2d at 815–16. The misunderstandings of the parties must be reasonable before a court may properly find a lack of mutual assent. *Id.* at 475, 799 P.2d at 816.

The ALJ had sufficient objective evidence to find that Sweet, as Hartford's agent, gave her assent to the agreement. The language of the agreement does not indicate in any way that the $50 was limited to temporary total disability payments. Hartford began deducting $50 from loss of earnings payments immediately following receipt of the letter. If Hartford had a different understanding of the terms of the agreement, its view was never made known to Sinclair or Hassett. While Sweet's interpretation of the

---

1. We do not decide here whether compensation payments under A.R.S. § 23–1044(B) are based on loss of earnings compensation.

letter would have been a more logical arrangement for Hartford, we do not see how the language of the agreement matches her interpretation nor are we persuaded that sufficient extrinsic facts exist to support her interpretation. Without any extrinsic facts to create a latent ambiguity, we cannot find a lack of mutual assent based on mutual misunderstanding.

## CONCLUSION

The findings of the Commission that Hartford and Sinclair entered into a valid agreement are affirmed.

McGREGOR and GRANT, JJ., concur.