Jones, &c., v. Brand.

CASE 48—ACTION FOR COMMISSION—APRIL 22.

# Jones, Etc. v. Brand.

APPEAL FROM LAW AND EQUITY DIVISION OF JEFFERSON CIRCUIT COURT.

PRINCIPAL AND AGENT—SUB-AGENT.—An agent whose power is limited to the collection of rents, payment of taxes and the taking of bids and the submission of them to the principal has no power to create a sub-agent for the purpose of effecting a sale of the property, and such sub-agent can not recover from the principal commission for making the sale.

RICHARDS AND RONALD FOR THE APPELLANT.

1. Dr. Curran Pope was not the agent for Mr. Jones for the sale of the property in controversy, and Pope did not employ appellee as sub-agent to make the sale.
2. Dr. Pope's authority to take bids had been exhausted prior to the date at which the sale was made and never did include the purchasers, Crutcher & Starks.
3. Brand has done nothing to earn the commission in this case.
4. The court erred in permitting Mr. Brand to read from his letterbook the supposed copy of the postal of October 18, 1893, addressed to Mr. Jones. It related to transaction between plaintiff and a party who was dead at the time the plaintiff was testifying.

Civil Code, sec. 606; Hobbs v. Russell, 79 Ky., 61; Viley v. Pettit, 96 Ky., 576.

5. Even if Pope had authority to sell, he could not delegate it to Brand. *Delegatus non potest delegari.* Mechem Agency, secs. 184, 185, 197, 964; Story Agency, secs. 14, 109; 1 Am. & Eng. Ency. of Law, 368; Barrett v. Rhem, 6 Bush, 466; Rudd v. N. C. & St. L. R. R. Co., 7 Ky. Law Rep., 823; Atlee v. Fink, 75 Mo., 103; Werner v. Marton, 11 How, 224; 2 Am. & Eng. Ency. of Law, 588.

6. No judgment can be rendered against a non-resident executrix who has not qualified in this State. Baker v. Smith, 3 Met., 265; Story on the Conflict of Laws, sec. 513.

BULLITT & SHEILD FOR THE APPELLEE.

1. "The appellee contends that he had express employment from Jones and from Curran Pope, as authorized agents; and that the appellee did make the sale, acting under such authority and under a promise on the part of Jones and his agent, Pope, to be paid a commission for his service rendered."

2. "The appellee contends that he performed the service with full knowledge on the part of Samuel H. Jones that he did perform the service; that he had procured the purchaser of the property to whom Jones afterwards sold, with full knowledge on the part of Jones that he was claiming and entitled to commissions; with a full knowledge on the part of Jones as to what the commissions were; that it is true that Jones, after the appellee, Brand, had brought him into contact with a purchaser, took up the negotiations and closed the sale in person, but that Jones did it with the understanding that he was compelled under the law, and in point of fact, to pay the appellee the commissions which the appellee had earned."

3. It is a plain principle of law, that where the agent is employed to procure a transfer but without the power to execute a contract, that he is entitled to his commissions when he procures the purchaser with whom the party contracts, and a purchaser who is ready and willing to perform his contract. This is a well-settled doctrine of Kentucky. Coleman v. Meade, 13 Bush, 358; 27 N. W. R., 301; First Philadelphia, 382; 38 Am. Rep., 441; 23 W. Va., 229-235.

4. Where the amount of commissions is not fixed, the parties are presumed to have acted in reference to the custom. 83 Pa. St.,

138; Barker v. Craig, Litt. Sel. Cases, 213; —— Am. & Eng. Ency. of Law, 1096, 1101.

5. Where a broker furnishes the name of a purchaser to the owner, the broker is entitled to his commissions when the contract is finally made with the purchaser.  Green v. Bartlett, 14 C. B. N. S., 681; 36 Law Journal, C. P., 262; Ency. of Law, "Brokers," vol. 2, p. 583; 38 Am. Rep., 441; 23 W. Va., 229; 27 Kan., 246; 33 N. J. Law, 247; 44 P., 511; 60 Ill. App., 592.

6. It is the principal's duty when he knows the agent has property for sale, to inquire whence the information came by which the purchaser was procured.  51 N. Y., 124; 29 Vt., 127; 7 Daly, 243; 2 Am. & Eng. Ency. of Law, "Brokers," 563; Viley v. Pettit, 16 Ky. Law Rep., 650.

7. Where beneficial services have been performed by one person for another who has rendered them and suffered them to proceed, a promise to pay for them may be implied; the law in that case considers the circumstances as evidence from which a request may be presumed.  James v. Bixby, 11 Mass., 34; Hatch v. Purcell, 21 N. H., 544; Livingston v. Rogers, 1 Caines (N. Y.), 588; Low v. Conn. Railroad, 46 N. H., 284; Hicks v. Burhasu, 10 Johns., N. Y., 243;  Hite v. Brannon, 5 Daly, 1; Westgate v. Monroe, 100 Mass., 227.

8. The doctrine *delegatus non potest delegari*, is not applicable to this case because Jones the principal referred Brand to Pope as his general agent without authority.

SAME COUNSEL FOR APPELLEE IN A SUPPLEMENTAL BRIEF.

BULLITT & SHEILD AND JOHN W. RODMAN FOR THE APPELLEE IN A PETITION FOR A REHEARING.

JUDGE BURNAM DELIVERED THE OPINION OF THE COURT.

This suit was instituted by appellee to recover commissions alleged to be due him as the duly-authorized agent of Samuel H. Jones, for his services in making a sale of the property of Jones situated on Fourth and Jefferson streets, in the city of Louisville, to Crutcher & Starks.

The executrix of Jones (who has died since the date of the alleged services) denies that appellee was the agent of her testator for the sale of said property; that he ever promised or agreed to pay such commissions, or any part

thereof; or that plaintiff rendered any services in effecting the sale of the property, with the knowledge and consent of her testator.

By agreement, a jury was waived, and both the law and facts of the case submitted to the court, who rendered judgment in favor of appellee for $1,975; and to reverse that judgment this appeal is prosecuted.

Samuel H. Jones resided in Philadelphia, and was the owner of certain real estate situated on Fourth street, in Louisville, Ky.

For many years Judge. Pope and his son, Dr. Curran Pope, had acted as his agents in collecting the rent, paying the taxes, and looking after the repairs upon the property.    Some time previous to October, 1892, appellee, who was at that time engaged in the business of real estate agent, addressed Jones a letter of inquiry in regard to his property in Louisville, Ky., and Jones' response is filed by Brand as an exhibit, and is in these words:

"Aldin Hotel, Chestnut Street, Phila., Pa., October 19, 1891.   John H. Brand & Co., Louisville, Kentucky—Dear Sirs:  Your favor of 2d duly received.   Regarding the expiration of leases, I must refer you to Judge Pope or his son, Dr. Curran Pope, who are thoroughly conversant with all details of my Louisville property, and are my agents in all matters concerning said property.

"I by no means wish to put the property on the market, but, as I wrote, would entertain propositions for improvement of same under long lease.   I have notified Dr. Curran Pope of your inquiry, and he will give you the data you wish.   Very truly, yours, Saml. H. Jones.

"P. S.   Your last letter forwarded .to me from Kennebunkport.   Have notified Dr. Curran Pope of its contents."

After the reception of this letter, it appears, from the

testimony of Dr. Pope, that appellee came to see him, and said to him that he thought he could sell the property; that he had an offer upon it; and Pope testifies, in substance, that he said to him that, in case he could find a purchaser for the property, if he would bring the bid to him he would submit it to Jones, and, if accepted, would divide the commissions with him. Appellee subsequently reported two bids to Dr. Pope, neither of which, however, was accepted.

During these negotiations, Dr. Pope addressed this communication to appellee:

"Louisville Ky., Sept. 5, '93. Mr. John H. Brand, City. —My Dear Mr. Brand: It was with some surprise that I learned from you that some other agent had offered Mr. Jones' property for sale. As you well know, I am Mr. Jones' representative, and it is through me only that any such authority might be obtained. I assure you that I am surprised, and would like to know who the party is, and by what authority he acts, as he has received none from me. Mr. Jones is particular about having his property hawked about the market, and I have never authorized any one to act for Mr. Jones but myself. The only person authorized to act with me is yourself, and any other person who presumes to act must be laboring under a delusion, for which he needs medical treatment.

"I have been approached by many real estate agents, but have always refused to act with them unless they brought me a written proposition. This has never been done. You are the only one at the present time that has any authority to act in conjunction with me.

"You may show this letter to your party, but I would request you and him to keep the matter quiet. Kindly

let me hear from you at the earliest possible moment and oblige, Your friend, Curran Pope.  (Dictated.)"

About the 11th day of October, 1893, Dr. Pope contracted to sell this property to other parties, without conference with appellee; but, before the matter was consummated, a publication appeared in one of the city papers stating that the property had been sold.  Both appellee and Crutcher & Starks were occupying it at the time. Appellee, after seeing this publication, went to see Dr. Pope in regard to the truth of the publication, and Pope told him that negotiations to that effect were pending; and it appears that, late in the afternoon of that day, he went into the storehouse of Crutcher & Starks, and was discussing the property and the sale, and that he stated to them that he had been informed by Dr. Pope that the deal had not been closed, and suggested to them that they telegraph Jones, in Philadelphia, offering an advance for the property of $10,000 over and above the reported price at which it had been sold.  This suggestion was acted upon, and Mr. Starks followed it up by going to see Jones with regard to the property, and finally purchased it.

The question is, was Brand the authorized agent of Jones to sell the property, and did he do it?  There is no contention on the part of appellee that he ever had any direct communication with Jones in regard to the matter, other than the letter, *supra*; and there is nothing in this letter to indicate that Jones employed him as agent to sell the property, or in any other capacity.  The question, therefore, is whether appellee had authority from Dr. Pope, the recognized agent of appellant, to negotiate the sale of the property in behalf of the owner, and whether Pope himself had authority to make such agreement. Pope testifies that he did not have any authority to sell

the property, and no authority to employ appellee or any other person in this capacity; that he was only authorized, in case he had any bids for the property, to submit them to Jones; and that he only authorized appellee, in the event he found a bidder, to submit the proposition to him, with the intention of dividing the commissions with him in the event a sale was effected.

The testimony shows that Dr. Pope, under what he regarded as authority (through a telegram from Jones dated October 11th), attempted to sell the property to Kleinhans & Simonson, and that appellee, having ascertained this fact, without a shadow of authority from Pope, suggested to Crutcher & Starks that they might prevent the consummation of the trade by a direct offer to Jones of an advance of more than $10,000. It can not be contended, in the face of these facts, which are testified to by all the witnesses, that, at the time he made the suggestion to Crutcher & Starks, he was acting as agent of Dr. Pope, because he was really attempting at that time to thwart an effort on the part of Pope to sell to another party. This is the only connection he seems to have had with the sale to Crutcher & Starks.

It was held in a litigation in the Federal court which grew out of the attempted sale by Pope to Kleinhans & Simonson, that Pope himself had no authority from Jones to conclude a sale of the property; and there is no testimony which shows that Jones ever authorized the appointment of any other agent by his agent Pope. "It is a general rule of law, in the absence of express or implied authority to employ a subagent, the trust committed to the agent can not be delegated to another so as to affect the rights of the principal." See Mechem on Agency, sec. 185. "But if the agent, having undertaken to transact the business of

his principal, employs a subagent on his own account, to assist him in what he has undertaken to do, he does so at his own risk, and there is no privity between such subagent and the principal." Story on Agency, sec. 14. "An agent who has bare power or authority must execute it himself, and can not delegate his authority to another." 1 Am. & Eng. Enc. Law, 368, and cases there cited. "An agent, ordinarily without express authority, or a fair presumption of one, growing out of a particular transaction or the usages of trade, has not the power to employ a subagent to do the business, without the knowledge and consent of the principal. The agency is a personal trust, for a ministerial purpose, and can not be delegated; for the principal employs the agent on the opinion he has of his personal skill and integrity, and the latter has no right to turn his principal over to another of whom he knows nothing. To entitle a broker to commission for his services, he must make it appear that the services were rendered under the employment and retainer by the principal, or that the latter accepted his agency and adopted his acts." See Barrett v. Rhem, 6 Bush, 466; Rudd v. N., C. & St. L. Railroad Co., 7 Ky. Law Rep., 823; Birch v. Powell, 15 Ky. Law Rep., 445; the Supreme Court of the United States, in Warner v. Martin, 11 How., 224.

The ground on which plaintiff seeks to recover in this action is that he sold the property as agent of Jones, and that Jones, during his lifetime, promised and agreed to pay his commissions on said sale. It seems to us the proof clearly shows that Jones never at any time employed appellee to render any services for him whatever in the sale of this property; that the authority to Dr. Pope was a limited authority to obtain bids, which were to be submitted; and that Pope had no authority from

[27]

Jones to employ any other person to assist him in this mat-
ter, so as to make Jones responsible therefor. The testi-
mony of both the Starks conclusively shows that appel-
lee, in suggesting to them that they might thwart the de-
signs of Dr. Pope to sell the property to another party,
could not have been acting under the authority of Dr. Pope,
as he was endeavoring to thwart the very purpose which
Pope had in view.

It is evident, from the proof in the case, that the tele-
gram of Crutcher & Starks, and their subsequent actions,
were suggested by appellee, but that, in making these sug-
gestions, he was not acting as the agent of Jones, and had
no valid or legal claim against him growing out of the
sale of the property.

For the reasons indicated, the judgment must be re-
versed, and remanded for proceedings consistent here-
with.