**SELECT PORTFOLIO SERVICING, INC., Appellant**

v.

**Donald W. BLEVINS, Fayette County Clerk, Appellee**

**NO. 2015–CA–000807–MR**

Court of Appeals of Kentucky.

RENDERED: JULY 8, 2016; 10:00 A.M.

BRIEF FOR APPELLANT: Brendan J. Shevlin, Lexington, Kentucky

BRIEF FOR APPELLEE: Julius Rather, Lexington, Kentucky

BEFORE: KRAMER, CHIEF JUDGE; CLAYTON AND TAYLOR, JUDGES.

*OPINION*

CLAYTON, JUDGE:

In the case before us, a trustee for a mortgage-backed securitized trust executed a limited power of attorney ("LPOA") to a master servicer. In that LPOA, the trustee granted the master servicer authority to issue LPOAs to subservicers so the subservicers have authority to act and sign for loans held in the mortgage-backed securitized trust. These second LPOAs are colloquially called "piggy-back" powers of attorney. Select Portfolio Servicing, Inc. (hereinafter "SPS") is a subservicer operating under a "piggy-back" power of attorney.

SPS attempted to file a mortgage release in the Fayette County Clerk's office, but it was rejected. According to the Fayette County Clerk's office, SPS needed the trustee, not the master servicer (which itself only had authority pursuant to an LPOA), to grant SPS a LPOA. SPS then sought declaratory judgment against Don-

ald W. Blevins, Jr., the Fayette County Clerk. SPS filed for summary judgment. The Fayette Circuit Court held a hearing then denied SPS's motion. SPS appeals.

## FACTS

In their briefs to this Court, Blevins accepts SPS's statement of the case. Accordingly, as both parties agree to the facts, we adopt SPS's Statement of the Case in part and quote the relevant portions for our review as follows, with record citations omitted:

[SPS] is a mortgage loan servicer that frequently deals with mortgage loans held in mortgage-backed securitized trusts, and in such cases, acts on behalf of the trustee of such mortgage-backed securitized trusts, including recording documents related to the mortgages held in such trusts, such as deeds of release. A mortgage loan servicer oversees the management of the loan accounts on the mortgages held in such mortgage-backed securitized trusts, including, critically for this case, recording documents related to the mortgages held in the trust in the real property records of the various states where they are recorded.

Frequently with loan servicing on mortgage loans held in mortgage-backed securitized trusts, there is a "master servicer"[ ] that has contractual ties directly with the trustee for said trusts, which master servicer may subcontract with companies to do the actual "day-to-day" loan servicing for the individual mortgage loans held in such trusts. This relationship where the master servicer hires a company to do the actual loan servicing is known as "subservicing," and the entity that does the actual loan servicing is known as the "subservicer."[ ] In the below-described limited power of attorney that is the subject matter of this case, Bank of America, N.A. ("Bank of America") was acting as master servicer for the mortgage-backed securitized trust, and SPS was acting as the subservicer for said trust.

So that subservicers like SPS herein can perform the loan servicing duties required of them, trustees for mortgage-backed securitized trusts frequently execute limited powers of attorney in favor of their master servicers, which limited powers of attorney include provisions that specifically contemplate and authorize the master servicer to subsequently execute separate limited powers of attorney in favor of their subservicers, that transfer on to the subservicers the trustee's authorization to act and sign on behalf of said mortgage-backed securitized trusts.

In other words, the trustee transfers authority to act and sign for the loans held in the mortgage-backed securitized trust on to the master servicer by an initial power of attorney, and the master servicer, with the express and written authorization of the trustee per the terms of the initial power of attorney, passes on some or all of this same authority to the subservicer by a second limited power of attorney. Upon information and belief, this scenario is sometimes referred to as a "piggy back" power of attorney.

II. Specific facts of this case

On or about July 7, 2013, [Blevins] received from SPS the limited power of attorney from master servicer Bank of America to subservicer SPS ("LPOA"), ... along with a deed of release for the underlying mortgage-backed securitized trust that held the mortgage to be released ... and the required recording fee. The LPOA conveyed from master servicer Bank of America to subservicer SPS the power to act and sign mortgage

documents, including deeds of release, for U.S. Bank National Association, as trustee, ("US Bank") which authority was previously granted to Bank of America by U.S. Bank in a separate "Trustee Limited Power of Attorney" that was attached as Exhibit A to the LPOA.

In the above-described Exhibit A to the LPOA, just before the schedule of the numerous mortgage-backed securitized trusts covered by the "Trustee Limited Power of Attorney," the following provision appears at the bottom of page 6 in an unnumbered paragraph, in which trustee U.S. Bank grants master servicer Bank of America the following authority:

> Servicer has the power to execute additional limited powers of attorney and delegate the authority given to it by U.S. Bank National Association, as Trustee, under the related servicing agreements listed on Schedule A, attached.

Despite the above-quoted express authority in Exhibit A to the LPOA, the Fayette Co. Clerk refused to record the LPOA, and sent it back to SPS along with the deed of release, the recording fee, and the Correction Request ... [T]he handwritten reason on said Correction Request appears to state: "One POA cannot appoint another to be POA. You would need to file a single POA document for U.S. Bank NA as trustee appointing Select Portfolio Servicing." Hence, the Fayette Co. Clerk directly contradicted, and refused to acknowledge as valid, the written authority the trustee U.S. Bank explicitly extended to master servicer Bank of America in Exhibit A to the LPOA, demanding instead that U.S. Bank directly appoint subservicer SPS as its attorney-in-fact in a single power of attorney.

After the Fayette Co. Clerk subsequently rejected two (2) similar limited powers of attorney between a trust, master servicer, and subservicer on an unrelated loan in November 2013 on which SPS was again the subservicer, representatives of SPS contacted representatives in the Recording Department at the Fayette Co. Clerk's office to explain the nature of the subservicing structure and the multiple powers of attorney that usually accompany it, and SPS's representatives were told that the Fayette Co. Clerk's interpretation of Kentucky Law was that, for any document to be recorded in Kentucky that contains a signature via power of attorney, a power of attorney must be recorded in the same county that contains both the person/entity receiving authority to sign the document to be recorded (attorney-in-fact) and the person/entity granting that authority (principal); there cannot be a separate power of attorney that transfers the authority via an intermediary.

...[B]ecause of the nature of the subservicing contractual structure and the way the trustee for the mortgage-backed securitized trust (U.S. Bank) has chosen to delegate authority to master servicer Bank of America, the "direct" power of attorney demanded by the Fayette Co. Clerk cannot be acquired or provided, leaving SPS unable to record documents it is required to by its subservicing agreements with master servicer Bank of America.

...KRS 382.365(1) requires mortgages to be released within thirty (30) days of being paid-in-full, and by virtue of its duty to act on behalf of the mortgage-backed securitized trust for the mortgage loans held in said trusts, SPS is being precluded from compliance with KRS 382.365 by the Fayette Co. Clerk's office's rejection of the above-described Deed of Release, which rejection also

exposes both SPS and the underlying mortgage-backed securitized trust to potentially harsh penalties in KRS 382.365(5) for failure to timely release its mortgage, which penalties can rise to as high as $500 per day under certain circumstances.

(Aplt's Brf. at 1–5) (footnotes and emphasis omitted, alterations added).

## STANDARD OF REVIEW

■ Initially, we note the instant appeal is from the denial of a summary judgment motion. "Generally, an order overruling a motion for summary judgment is interlocutory and not appealable." *Ford Motor Credit Co. v. Hall*, 879 S.W.2d 487, 489 (Ky.App.1994) (citing *Battoe v. Beyer*, 285 S.W.2d 172 (Ky.1955)). However, there is an exception to the general rule when: (1) the facts are undisputed; (2) the court's ruling is a matter of law; (3) the motion is denied; and, (4) a final judgment is entered with an appeal therefrom. *Roman Catholic Bishop of Louisville v. Burden*, 168 S.W.3d 414, 419 (Ky.App.2004) (citing *Transportation Cabinet, Bureau of Highways, Com. of Ky. v. Leneave*, 751 S.W.2d 36 (Ky.App.1988)). All of these prongs are met in the instant case. Thus, we review the trial court's legal ruling *de novo. See Cincinnati Ins. Co v. Motorists Mut. Ins. Co.*, 306 S.W.3d 69, 73 (Ky.2010).

## ANALYSIS

This case ostensibly places two issues before this Court: (1) may a trustee execute a LPOA to a mortgage servicer that gives the servicer authority to execute additional LPOAs to subservicers; and (2) if the answer to issue one is "yes," then should the County Clerk record both said servicer's LPOA to the subservicer and any documents the subservicer executes according to the LPOA? We address each issue in turn.

## I. May a trustee execute a LPOA to a mortgage servicer that gives the servicer authority to execute additional LPOAs to subservicers?

■ A power of attorney creates an agency relationship between the principal and the agent. *Ping v. Beverly Enterprises, Inc.*, 376 S.W.3d 581, 591 (Ky.2012) (citing *Phelps v. Louisville Water Company*, 103 S.W.3d 46, 50 (Ky.2003)). This is so because "[a] power of attorney is a written, often formally acknowledged, manifestation of the principal's intent to enter into [a fiduciary relationship] with a designated agent" where the agent acts on the principal's behalf and subject to the principal's control. *Id.* at 590 (alterations added).

■ To determine the metes and bounds of the agency relationship, one must examine the power of attorney document's four corners. "It has long been the agency law in Kentucky and elsewhere that the language in the power of attorney expresses the intent of the principal in regard to what authority the agent has." *Extendicare Homes, Inc. v. Whisman*, 478 S.W.3d 306, 356 (Ky.2016) (Noble, J., dissenting). "The construction of a power of attorney is a question of law for the court." *Ping*, 376 S.W.3d at 590 (citing *Wabner v. Black*, 7 S.W.3d 379, 381 (Ky.1999); *Ingram v. Cates*, 74 S.W.3d 783 (Ky.App. 2002)).

■ When reviewing the power of attorney, Kentucky adheres to "the age-old principle that a power-of-attorney must be strictly construed in conformity with the principal's purpose." *Whisman*, 478 S.W.3d at 322. Concerning powers of attorney to convey or release property, Kentucky Revised Statutes ("KRS") 382.370 provides as follows:

Powers of attorney to convey or release real or personal property, or any inter-

est therein, may be acknowledged, proved and recorded in the proper office, in the manner prescribed for recording conveyances. If the conveyance made under a power, is required by law to be recorded or lodged for record, to make the same valid against creditors and purchasers, then the power must be lodged or recorded in like manner, and no such power so recorded shall be deemed to be revoked by any act of the party by whom it was executed, except from the time when there has been lodged for record in the office in which the power is recorded a written revocation, executed and proved or acknowledged in the manner prescribed for conveyances, or a memorandum of revocation made on the margin of the record thereof, which memorandum is signed by the party executing the same, and attested by the clerk.

■ In the instant case, the trustee executed a LPOA to the servicer that gave the servicer "the power to execute additional limited powers of attorney and delegate the authority given to it by U.S. Bank National Association, as Trustee, under the related servicing agreements listed on Schedule A[.]" The servicer then executed a LPOA to the subservicer, SPS, that stated as follows:

> Pursuant to the power granted to it by the Trustee Limited Power of Attorney, [the servicer] as Owner's attorney-in-fact, further grants Subservicer full power and authority to execute such instruments and to do and perform all and every act and thing requisite, necessary and proper to carry into effect the power or powers granted by or under this Limited Power of Attorney as fully, to all intents and purposes, as [the servicer] itself might or could do under the Trustee Limited Power of Attorney, and hereby does ratify and confirm all that

Subservicer shall lawfully do or cause to be done by authority hereof.

SPS argues that the authority granted the servicer in its LPOA allowed the servicer to grant a LPOA to SPS as a subagent. SPS's argument is largely based on *Capurso v. Johnson*, 248 S.W.2d 908, 910 (Ky.1952), where the Court held, "[I]t is generally recognized that if an agent employs a subagent for his principal, and with his authority, express or implied, then the subagent is the agent of the principal and is directly responsible to the principal for his conduct[,]" and on Restatement (Third) of Agency § 3.15, which provides:

> (1) A subagent is a person appointed by an agent to perform functions that the agent has consented to perform on behalf of the agent's principal and for whose conduct the appointing agent is responsible to the principal. The relationships between a subagent and appointing agent and between the subagent and the appointing agent's principal are relationships of agency as stated in § 1.01.
>
> (2) An agent may appoint a subagent only if the agent has actual or apparent authority to do so.

SPS also argues that a trustee has the ability to delegate its authority under KRS Chapter 386, the Uniform Trust Code. Specifically, KRS 386B.8–150(1)(b)(1) grants that a trustee, without court authorization, may exercise all powers over the trust property that an unmarried competent owner who individually owned the property could. And KRS 386B.8–150(1)(b)(2) grants the trustee "[a]ny other powers appropriate to achieve the proper investment, management, and distribution of the trust property[.]"

Blevins responds that SPS is relying on statutes that do not expressly allow the trustee to delegate to its agent authority

to create subagents. Blevins argues the statutes permit a trustee to execute a LPOA for SPS. He avers SPS should take this straightforward route to quickly resolve the entire case. While we find no fault with Blevins for complying only with what the statutes expressly allow, we agree with SPS that the trustee can create a LPOA that allows its agent to create subagents.

Kentucky law has long allowed principals to authorize agents to employ or create subagents. *See, e.g., Jones v. Brand,* 106 Ky. 410, 50 S.W. 679, 680 (1899) ("It is a general rule of law, in the absence of express or implied authority to employ a subagent, the trust committed to the agent cannot be delegated to another so as to affect the rights of the principal.") (citation omitted). Here, the servicer's LPOA expressly allowed it to execute additional LPOAs for subservicers. The servicer, under this express authority, executed a LPOA to a subservicer. This action comports with Kentucky's jurisprudence. Thus, we find that a trustee may execute a LPOA to a mortgage servicer that gives the servicer authority to execute additional LPOAs to subservicers.

## II. Should the County Clerk record both the servicer's LPOA to the subservicer and any documents the subservicer executes according to the LPOA?

■ Having found that the trustee could delegate to the servicer the authority to create a subservicer, we now address whether the County Clerk must record the LPOA and any documents the subservicer executes. Here, SPS attempted to record both the LPOA that the trustee granted to the servicer, and the LPOA that the servicer granted to SPS as the subservicer. It also attempted to record a deed of release. The County Clerk did not permit any of

the documents to be recorded because: (1) he did not believe the agency relationship was permissible; and (2) he did not find any express authority in the statutes permitting these documents to be recorded.

Having resolved that the agency relationship is permissible, we now have to resolve whether the County Clerk has authority under the recording statutes to permit these documents to be recorded. To that end, Blevins testified below that the documents met all the technical requirements for being recordable, but he nonetheless found no express statutory authority permitting their recording.

We agree that the documents meet the KRS Chapter 382 technical requirements for being recordable. Notably, the Clerk's Correction Request form only stated that the LPOA needed to be directly from the trustee to the subservicer. It did not note any technical errors with the documents themselves. Thus, because the documents meet the technical requirements for being recordable instruments, Blevins has authority to record them. Accordingly, we answer the second issue in the affirmative.

## CONCLUSION

Because we find that a trustee may grant a servicer authority to grant LPOAs to subservicers, and because we find SPS's documents comply with the technical requirements for recording, we reverse the trial court's order denying SPS's summary judgment motion and remand for entry of an order consistent with this opinion.

ALL CONCUR